Board of Education, Decatur School District No. 61, Macon County, Illinois, for Use of United States Electric Company, Plaintiff-Appellant, v. Erwin M. Swam, Trading as Swam Electric Service, and Aetna Casualty and Surety Company, Defendants-Appellees.

Gen. No. 9,984.

Third District.

February 18, 1955.

Released for publication March 7, 1955.

McMillen, Garman & Owen, of Decatur, for appellant.

LeForgee, Samuels & Miller, of Decatur, for appellee; Carl R. Miller, and Jerald E. Jackson, both of Decatur, of counsel.

MR. JUSTICE HIBBS delivered the opinion of the court.

Plaintiff, United States Electric Company, supplied electrical materials of the value of $1,694.94 to the defendant Erwin M. Swam, doing business as Swam Electric Service. These materials were used by Swam in the construction of school buildings for Decatur School District No. 61 pursuant to a contract between the district and Swam dated December 6, 1949. Final delivery of the materials was made on November 26, 1951. The electric company filed its verified notice of claim with the district on May 16, 1952 but no part of it has been paid.

In accordance with Ill. Rev. Stats. 1953, ch. 29, pars. 15–16 [Jones Ill. Stats. Ann. 126.320–126.321], Swam, at the time he entered into the contract with the district, executed a performance bond to the district with the Aetna Casualty and Surety Company, defendant herein, as surety. This suit was filed in the circuit court of Macon county on June 1, 1953 by the electric company against Swam and against the surety company on its bond. On February 24, 1954 that court dismissed plaintiff's amended complaint on the ground that the suit was prematurely brought. Plaintiff electric company has appealed to this court.

The bond in question here binds both principal and surety in the penal sum of $77,302 for the performance of Swam's contract with the district. The condition thereof provides that the principal (Swam) shall perform his contract and shall fully indemnify the district from damages for failure to do so. It further

126

provides that the obligors shall "promptly make payment to all persons supplying labor and material for use in the prosecution of the work or the performance of the contract." In addition, the bond provides that "any person furnishing material or performing labor either as an individual or a sub-contractor, shall have the right to sue on this bond in the name of the owner for his use and benefit, all in accordance with the Provisions of an Act entitled 'An Act in relation to Bonds of Contractors entering into contracts for public construction, approved June 20, 1931,' the provisions of said Act being made a part of this bond as though fully set forth herein."

In 1931 the legislature adopted "An Act in Relation to Bonds of Contractors entering into contracts for public construction," which became effective July 1 of that year. (Ill. Rev. Stats. 1939, ch. 29, pars. 15–16.) Under the Act it was held that a performance bond for public construction not in conformity with the provisions of the Act was good as a common-law obligation. (Laclede Steel Co. v. Hecker-Moon Co., 279 Ill. App. 295.) The Act was also construed in Fodge v. Board of Education, Village of Oak Park, 309 Ill. App. 109. There the performance bond contained no undertaking on the part of the contractor and surety to pay laborers and materialmen, but such a provision was included in the contract with the board of education, which by the terms of the bond was made a part of it. The Appellate Court for the First District held that a subcontractor could not sue on the bond and contract as a third-party beneficiary of the surety company's common-law undertaking, but could sue in the name of the board of education because of par. 15 of the statute above referred to.

In the instant case reference to the contract with the district is not necessary to determine plaintiff's rights, since the bond itself recites that the contractor "shall

promptly make payment to all persons supplying labor and material . . ."

The surety company here contends however that plaintiff cannot recover because of the effect of an amendment to par. 15 which was adopted after the decision in the Fodge case, supra. This amendment, effective July 1, 1941, is as follows: "Each such bond shall be deemed to contain the following provisions whether such provisions be inserted in such bond or not:

" 'The principal and sureties on this bond agree to pay all persons, firms and corporations having contracts with the principal or with sub-contractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished, in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' "

The amendment clearly indicates a legislative intent to make all performance bonds for public construction statutory obligations and thus avoid the uncertainties arising out of the effect of a bond not in conformity with the statute.

Defendant surety company interprets the amendment to par. 15 as limiting its liability to only those subcontractors, laborers and materialmen who remain unpaid after final settlement has been made. Plaintiff on the other hand contends that the amendment merely provides by statutory fiat, that every performance bond for a public work shall contain as a minimum requirement, the terms therein set forth, and that it was not intended to restrict the permissible undertakings that a principal or surety might make

128

with the obligee. In other words, it is contended that the contractor and surety by the bond could create an obligation whereby a more prompt payment would be made of liabilities to materialmen and subcontractors for material furnished and labor performed in the performance of the public work. We believe the interpretation advanced by plaintiff is correct.

■ The surety company in the bond in question here undertook to "promptly make payment to all persons supplying labor or material for use in the prosecution of the work or the performance of the contract." It therein agreed that any subcontractor might sue in the name of the school district in accordance with the provisions of the statute. Par. 16 of the Act which authorizes such suit sets up certain procedural requirements, one of which is that no suit shall be brought until 120 days have elapsed after the last item of work or the furnishing of the last item of material, unless final settlement has been made. The plaintiff has met all of these requirements. Thus both the bond and par. 16 of the statute authorize plaintiff's suit. It may well be that defendant surety company could in its bond, limit its liability as provided by the amendment, but it has not done so. To hold that such amendment involuntarily limits the liability to those cases where final settlement has taken place would render the 120 days delay period of par. 16 meaningless and unnecessary. We do not believe the legislature intended this result and it is our duty to construe the statute to avoid it. (People ex rel. High School Dist. No. 231 v. Hupe, 2 Ill.2d 434.) Moreover our interpretation of the statute carries out the obvious intent of the legislature to protect laborers and materialmen for whom no right of mechanics' lien exists against a public work. (Gunther v. O'Brien Bros. Const. Co., 369 Ill. 362.)

The judgment of the circuit court of Macon county is reversed and the cause remanded to that court with

directions to overrule defendant's motion to dismiss plaintiff's amended complaint.

Reversed and remanded with directions.