**CONCRETE STRUCTURES OF THE MIDWEST, INC., a Corporation, Plaintiff-Appellant,**

v.

**FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, a Corporation, Defendant-Appellee.**

No. 84-2764.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1985.

Decided May 2, 1986.

Walter E. Trittipo, Jr., Speckman & Trittipo, Chicago, Ill., for plaintiff-appellant.

J. Calvin Daulton, III, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant-appellee.

Before WOOD, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and GORDON, Senior District Judge.*

FAIRCHILD, Senior Circuit Judge.

Plaintiff-appellant Concrete Structures of the Midwest, Inc. ("Concrete Struc-

---

* Senior District Judge Myron L. Gordon of the Eastern District of Wisconsin sitting by designa-

tion.

tures") seeks to recover on a public works bond. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. The parties agree that Illinois law controls. Plaintiff subcontracted with City Construction Company ("City") to perform part of City's obligation under its public works contract with the Metropolitan Sanitary District of Greater Chicago ("MSD"). Pursuant to the Illinois Public Contractor's Bond Act, Ill. Rev.Stat. ch. 29, ¶¶ 15 and 16 (1983) (the "Act"),[1] MSD provided Concrete Structures with a payment and performance bond as part of the contract documents, underwritten by defendant-appellee Fireman's Insurance Company of Newark, New Jersey ("Fireman's"). The bond provided that the surety would pay "all valid claims and demands whatsoever." Concrete Structures was later removed by City from the MSD contract before its completion; all its claims for labor and materials were paid. Having concluded that City is judgment proof, Concrete Structures filed suit against Fireman's for its lost profits from City's alleged anticipatory breach of the subcontract. Fireman's moved to dismiss the complaint for failure to comply with the Act's six-month limitations provision, which motion was granted.

All Illinois public works payment and performance bonds are governed by the Act. Section 1 requires that every public works contractor must furnish a bond that, "among other conditions," provides for the completion of the contract, and for the payment of materials used and labor performed, whether by the subcontractor or otherwise. By the terms of the statute, each such bond is deemed to contain provision for coverage of all just claims for labor and materials, regardless of whether the bond, by its terms, includes such coverage or not. Thus by operation of law every public construction bond is in compliance with the statute; attempts to provide less coverage are simply ineffective. Broader coverage than the minimum mandated is also permissible. *Bd. of Local Improvements of South Palos Township v. St.*

*Paul Fire and Marine Insurance*, 39 Ill. App.3d 255, 350 N.E.2d 36, 38 (1st Dist. 1976). Section 2 permits all labor and materials suppliers to sue on the bond, and describes the procedure for recovery. In addition to notice requirements, it provides that "nor shall any action of any kind be brought later than six (6) months after the acceptance thereof of the building project or work."

Concrete Structures contends that its delay is not fatal because Fireman's bond is a non-statutory common law obligation, enforceable independently of the statute. It argues that when a bond provides coverage in addition to that mandated by § 1, an action on that bond is not subject to the limitations requirements of § 2. A broader bond is said to be non-statutory because it is not the mandatory, minimum "public construction" bond described by § 1. Concrete Structures' argument turns on the terms of the bond, not the nature of the claim; even a claim for labor and materials under a broader bond would be enforceable as a common law obligation.

It should be noted that plaintiff's claim against the surety for lost profits rests upon the general language "all valid claims." Even assuming that theory to be valid, Concrete Structures' approach to the Act's procedural requirements must be rejected, because it is foreclosed under Illinois law, and is at odds with the policy of the Act.

Plaintiff relies on *Laclede Steel Co. v. Hecker-Moon Co.*, 279 Ill.App. 295 (3rd Dist.1935), for its common law bond approach. The plaintiff there was permitted to recover on the bond as a common law obligation, because it provided less coverage, and thus was "other and different" than the bond described in the statute. (Prior to 1941, the Act did not contain the mandatory minimum coverage provision.) The court held that the contractor should not be allowed to claim the protection of a statute with which it had failed to comply.

---

**1.** Hereinafter, ¶ 15 is referred to as § 1, and ¶ 16 is § 2, as accordance with the nomenclature of the Illinois decisions construing the Act.

*Laclede* does not provide authority for Concrete Structures' position. Rather, that case suggests that where the surety has more than complied with § 1, by providing greater coverage, the beneficiary should be held to the requirements of § 2. Moreover, *Laclede* addresses a problem that was solved by the subsequent amendment of § 1 making all bonds in compliance with the minimum requirements of the Act by operation of law. "The amendment clearly indicates a legislative intent to make all performance bonds for public construction statutory obligations and thus avoid the uncertainties arising out of the effect of a bond not in conformity with the statute." *Board of Education v. Swam,* 5 Ill.App.2d 124, 124 N.E.2d 554, 555 (3rd Dist.1955) (suit on defendant's broader bond authorized and controlled by § 2); *McWane Cast Iron Pipe Co. v. Aetna Casualty and Surety Co.,* 3 Ill.App.2d 399, 122 N.E.2d 435, 437 (3rd Dist.1954) (*Laclede* now inapplicable because decided prior to 1941 amendment).

As Illinois cases demonstrate, a public works bond is a statutory bond, and the decisions leave no room for saying that a bond with additional terms becomes non-statutory. In *City of DeKalb v. Sornsin,* 46 Ill.App.2d 161, 196 N.E.2d 502 (2nd Dist. 1964), *reversed on other grounds,* 32 Ill.2d 284, 205 N.E.2d 254 (1965), a subcontractor's suit for materials was dismissed for failure to comply with § 2. The court held that where a bond has been furnished pursuant to the Act, the only right to sue upon such a bond is created and defined by § 2.

> Since plaintiff sued upon a statutory bond executed pursuant to the requirements of the Act relating to such a bond, its right to sue arises under and is subject to the conditions and limitations imposed by said Act. Plaintiff failed to meet such conditions and limitations and as a result is precluded from recovery on the bond in question. *McWane Cast Iron Pipe Co. v. Aetna Cas. and Surety Co.,* 3 Ill.App.2d 399, 122 N.E.2d 435 (3rd Dist.1954).

*Id.* at 196 N.E.2d 505. No mention is made of a different result based on the terms of the bond or even on the nature of the claim; rather, the "Act provides for the procedure which must be followed by a person seeking to enforce liability under the bond which a contractor must give. Such procedure is specifically detailed in plain language in Section 2 of the Act." *Id.* at 506. *See also United City of Village of Yorkville v. W.J. Lewis Construction Co.,* 48 Ill.App.2d 463, 198 N.E.2d 863, 866 (2nd Dist.1964) (compliance with § 2 is a jurisdictional requirement for suit on a bond furnished pursuant to § 1); *cf. Amoco Oil Company v. Capitol Indemnity Corp.,* 95 Wis.2d 530, 545, 546, 291 N.W.2d 883 (Wis.Ct.App.1980) (construing Illinois law) ("a cause of action by a materials supplier against the surety of such bonds is a purely statutory, and not a common law, creation.... [The Act] provides a specific remedy to suppliers conditioned upon strict compliance with procedural requirements. Such compliance is jurisdictional.").

Plaintiff does not argue, and we do not think, that only a claim for labor and/or materials under a statutory bond is subject to the requirements of § 2, that is, that the nature of the claim or cause may sever it from the statute. Although no Illinois cases involved claims other than for labor and materials, they do not suggest that a different result would follow for a different type of claim; indeed, they treat the statute in a unitary fashion, with § 2 as the means to enforce the rights and duties created by § 1. Moreover, § 2 states that the six month limitation applies to "any action of any kind"; there is no reason to deem that this broad language is limited to actions for labor and materials.

Finally, to permit plaintiffs to ignore § 2 under any theory would undercut the policy that led to the adoption of mandatory coverage. "[T]he obvious intent of the legislature [is] to protect laborers and materialmen for whom no right of mechanics' lien exists against a public work." *Swam,* 124 N.E.2d at 556. In return for providing at least the statutory minimum, the surety and the general contractor are protected by the Act's notification and limitations provi-

sions. As stated by the District Court in its unpublished opinion,

applying the longer general statute of limitations to non-statutory claims would upset the balance achieved by the legislature between protecting the rights of claimants and limiting the time during which the general contractor and surety must worry about potential claims. It would also encourage sureties to write as narrow a bond as possible since any language which might be construed as providing non-statutory protection could result in claims being brought long after the surety had considered itself safe from any liability on the bond. Since the main purpose of the statute is to *protect* laborers and materialmen, it would be anomalous to interpret the statute in such a way as to encourage sureties to provide the narrowest possible protection.

Therefore we reject the theory that provision of coverage in addition to that statutorily mandated creates an obligation not subject to the statute's enforcement requirements. The judgment of the District Court is AFFIRMED.