**GREEN ELECTRIC SYSTEMS, INC., Respondent,**

v.

**METROPOLITAN AIRPORTS COMMISSION, Appellant.**

No. C3–91–2420.

Court of Appeals of Minnesota.

July 7, 1992.

Review Denied Aug. 27, 1992.

Clinton E. Cutler, William E. Connors, Fredrikson & Byron, P.A., Minneapolis, for respondent.

Donald W. Selzer, Jr., Jodeen A. Kozlak, Oppenheimer Wolff & Donnelly, Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., and KLAPHAKE, and FOLEY *, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant challenges the trial court's determination that it is liable for the unpaid balance of a contract between respondent, a subcontractor, and the general contractor, because it failed to obtain a payment bond under Minn.Stat. § 574.26 (1990).

## FACTS

Appellant, the Metropolitan Airports Commission (MAC), solicited competitive bids for the installation, placement and maintenance of commercial advertising at the Minneapolis–St. Paul International Airport. Airport Media Marketing (AMM) submitted a bid which the MAC accepted, and they entered into the Terminal Facilities Display Agreement (agreement). Pursuant to the agreement, AMM designed and constructed the advertising display fixtures and marketed display space to commercial advertisers. In return, AMM paid a percentage of the commercial revenue to the MAC.

AMM hired a subcontractor, respondent Green Electric Systems, Inc. (Green Electric), to install and repair the displays' electrical wiring. Green Electric was unable to collect from AMM and sought payment from the MAC. Green Electric argued the MAC was liable because it failed to obtain a payment bond under Minn.Stat. § 574.26 (1990) which requires a public body to obtain a payment bond for contracts which involve the doing of "public work."[1] If a payment bond is not obtained, the public body shall be liable for any loss. Minn. Stat. § 574.28 (1990).[2]

Under the agreement, AMM did obtain a "performance" bond as required by the MAC. The parties dispute, however, whether this bond ran to the benefit of

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

1.  Minn.Stat. § 574.26 provides in part:
    [A] contract with the state, or with any municipal corporation or other public board or body thereof, for the doing of any public work, is not valid unless the contractor shall give bond to the state or other body contracted with, for the use of the obligee, the state and of all persons doing work or furnishing skill, tools, machinery, or materials * * * conditioned for the payment, as they become due, of all just claims for such work * * *, for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified, and for the enforcing of the terms of the bond if action is brought on the bond.

2.  Minn.Stat. § 574.28 provides in part:
    Such bond shall be approved by, and filed with, the treasurer of the obligee named therein * * *. If such bond be not taken, the corporation or body for which work is done under the contract shall be liable to all persons furnishing labor, skill or material to the contractor thereunder for any loss resulting to them from such failure.

Green Electric. Green Electric commenced this action after AMM released the performance bond. The trial court granted Green Electric summary judgment and this appeal followed.

## ISSUES

1. Did the trial court err in determining the contract between the MAC and AMM was a contract for the doing of "public work" under Minn.Stat. § 574.26?

2. Did the trial court err in determining the MAC's performance bond did not comply with the bond requirement in Minn. Stat. § 574.26?

3. Is Green Electric estopped from maintaining an action for failing to take steps to protect itself under Minn.Stat. § 574.31?

4. Is Green Electric required to show AMM was insolvent at the time of the default before recovering against the MAC?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court must review the record for the purpose of answering two questions: (1) whether there are any issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The issues decided by the trial court are matters of law. We therefore are not bound by and need not give deference to the trial court's determination. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ The MAC argues the trial court erred in concluding its contract with AMM was a contract for "public work." We disagree.

■ The term "public work" is not defined by statute. We adopt, however, the following factors which both parties set forth to determine whether a contract is for the doing of "public work": (1) owner-ship of the project; (2) funding of the project; (3) the scope of the municipality's participation in the project; and (4) the extent the project is put to a public use. *See Judd Supply Co. v. Merchants & Mfrs. Ins. Co.*, 448 N.W.2d 895, 899 (Minn.App. 1989), (public works typically are projects owned and paid for by the government, exempt from property taxes and put to common use), *pet. for rev. denied* (Minn. Feb. 21, 1990).

Our review of the agreement indicates the MAC retained significant ownership interests in the advertising displays; the MAC participated greatly in the project including complete control over all aspects of AMM's use, construction and placement of the display fixtures; and the project was put to a public use through use of public service announcements which benefitted the MAC. Although the funding was primarily private, no one factor is controlling. The totality of the factors indicates the contract between the MAC and AMM was for the doing of "public work." Therefore the trial court correctly concluded this was a contract for "public work" which required the MAC to obtain a payment bond pursuant to Minn.Stat. § 574.26.

### II.

■ The MAC asserts that if its contract with AMM was for the doing of "public work," the performance bond it obtained satisfied the payment bond requirement in Minn.Stat. § 574.26. We disagree.

■ The agreement required AMM to execute and deliver a performance bond to the MAC which AMM did. The performance bond, however, contained no language indicating it was conditioned to pay subcontractors such as Green Electric. Where a building contract merely requires a bond for the faithful performance of the contract and does not require the bond to be conditioned to pay laborers and persons supplying materials, there is no implied promise by the surety to pay the laborers and persons supplying materials. *Crow & Crow, Inc. v. St. Paul–Mercury Indem.*

*Co.*, 247 Minn. 426, 429–31, 77 N.W.2d 429, 431–32 (1956).

The MAC argues Green Electric could have recovered under the performance bond because the agreement was incorporated into the bond's terms and the agreement required AMM to obtain a bond conditioned to pay subcontractors. We disagree. Material suppliers may maintain an action directly against the surety only if the building contract "specifically required a bond conditioned to pay laborers and materialmen." *See id.* at 429, 77 N.W.2d at 431–32. Here, the agreement itself did not specifically require a bond conditioned to pay laborers and persons supplying materials, thus Green Electric could not have maintained an action directly against the surety. *See id.* We therefore conclude the bond only protected the MAC by ensuring AMM performed its obligations under the agreement. The bond did not run to the benefit of Green Electric.

The MAC contends its extension of the bond for six months shows that Green Electric could make a claim under the bond. We find this reasoning unpersuasive. It was in the MAC's own self-interest to extend the bond to protect itself in the event AMM declared bankruptcy.

Additionally, we note that since the MAC now owns the display fixtures, it has received the benefit of Green Electric's work. It is not unreasonable that the MAC pay for the benefit it received where the MAC could have taken steps to protect itself. The stipulated facts indicate the MAC has obtained payment bonds complying with Minn.Stat. § 574.26 in the past, and considered obtaining such a bond in this case. Thus the MAC could have insulated itself from liability in the event AMM defaulted, but chose not to do so. We conclude the MAC failed to comply with the bond requirement in Minn.Stat. § 574.26 and therefore may be liable for Green Electric's loss under Minn.Stat. § 574.28.

### III.

The MAC argues that even if it failed to obtain a bond under Minn.Stat. § 574.26, it is not liable because Green Electric failed to take the steps necessary to protect itself under Minn.Stat. § 574.31.[3] We disagree. Because the MAC failed to obtain a payment bond as required under section 574.26, it follows that Green Electric was not required to perform the preconditions for a bond that did not exist.

### IV.

The MAC asserts Green Electric cannot recover because it failed to show AMM was insolvent at the time of the default. We agree that Green Electric must show AMM's insolvency. However, the parties did not stipulate to AMM's insolvency and the trial court made no finding on this issue. Therefore we must remand this determination to the trial court.

Green Electric may recover against the MAC only if it has suffered a loss. If AMM was solvent at the time it defaulted upon its obligation with Green Electric, then no loss occurred and the MAC cannot be held liable. *See Wilcox Lumber Co. v. School Dist. No. 268*, 106 Minn. 208, 208–09, 118 N.W. 794, 795 (1908). Conversely, if AMM was insolvent, it could not have been compelled to pay through legal proceedings and the MAC would be liable for the debt. *See id.*

The mere fact that AMM failed to pay is not conclusive that it could not pay, or could not have been compelled to do so by appropriate legal proceedings. *See Fargo Cornice & Ornament Co. v. School Dist. No. 88*, 152 Minn. 342, 343, 188 N.W. 733, 733 (1922) (quoting *Wilcox Lumber Co. v. School Dist. No. 268*, 103 Minn. 43, 114 N.W. 262 (1907)). In the absence of a judgment and an execution returned unsatisfied, the evidence to show insolvency, and

---

**3.** Minn.Stat. § 574.31 provides in part:
No action shall be maintained on any such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of the claim and the date of furnishing the last item thereof, * * * nor unless the action is begun within one year after the filing of such notice.

a consequent loss, must establish that the debtor had no property not exempt from execution out of which collection could be made. *Id.*, 152 Minn. at 344, 188 N.W. at 734.

We disagree with the MAC's assertion that the record shows AMM was solvent on May 15, 1990. Rather, the record shows only that no bankruptcy proceedings had been instituted as of that date. In any event, insolvency for purposes of bankruptcy proceedings is not the test. *Id.* Because the trial court did not determine whether AMM was insolvent and the record is insufficient for us to determine whether Green Electric could have recovered directly against AMM, we remand to the trial court on this limited issue.

## DECISION

In conclusion, we hold the trial court correctly determined the contract between the MAC and AMM was for the doing of "public work" and that the MAC failed to obtain a payment bond as required by Minn.Stat. § 574.26. Therefore Green Electric is entitled to recover against the MAC if it can show it sustained a loss. A loss may be shown by proving AMM was insolvent and unable to pay the debt at the time of the default. Because the record is insufficient for us to make such a determination, this issue is remanded to the trial court.

Affirmed in part and remanded.

DANIEL F. FOLEY, Judge, dissenting.

I respectfully dissent.

It is my firmly held view that the claim of Green Electric, subcontractor in this case, should fail.

There was a total failure by Green Electric to comply with Minn.Stat. § 574.31 (1990). It is an undisputed fact that Green Electric's work was completed and accepted on November 10, 1988. However, Green Electric did not notify the MAC of AMM's default or even inquire about a bond until February 1990. Minn.Stat. § 574.31 imposes two conditions on a subcontractor for it to maintain an action on a bond. First, the subcontractor must provide written notice to the appropriate government agency, and the notice must be provided within 90 days after completion and acceptance of the work. Strict compliance with this statute is required. *See Alexander Constr. Co. v. C & H Contracting, Inc.*, 354 N.W.2d 535 (Minn.App.1984).

As noted, Green Electric not only failed to give proper notice, but did not even inquire about a bond until long after the 90 days had run.

Here, the majority opinion gives little, if any, consideration to the fact that the performance bond benefitted both the MAC and Green Electric. The performance bond entered into by AMM and the surety (A-179) acknowledged the regularity and validity of the Terminal Facilities Fixed Display Advertising Agreement and incorporated that agreement into the performance bond in words as follows:

NOW, THEREFORE, if the principal,

1. Shall faithfully fulfill and perform said Terminal Facilities Fixed Display Advertising Agreement and any amendments thereto, for the period from May 15, 1988 through May 31, 1989, it being understood that said surety hereby waives notice of any and all amendments to said Agreement, then this obligation shall be void, but otherwise it shall remain in full force and effect.

Among the terms of the lease agreement incorporated by reference into the performance bond, is an obligation of the concessionaire (AMM) to, among other things,

6. Be responsible for all "fixtures, equipment, supplies," installation and ongoing maintenance costs related to the operation of the Advertising Concession.

(Appellant's App. A.122)

The performance bond, by incorporating the terms of the lease agreement, satisfied the provisions of Minn.Stat. § 574.26 and protected Green Electric against the contractor's default. *Crow & Crow, Inc. v. St. Paul–Mercury Indem. Co.*, 247 Minn. 426,

431 n. 2, 77 N.W.2d 429, 432 n. 2 (1956). Because the performance bond, by its terms, protected Green Electric, it could have maintained an action against the performance bond surety. *See id.* at 429, 77 N.W.2d at 431.

Green Electric chose not to pursue an action against the performance bond surety, assuming that bond not to be viable, and ignored the opportunity to make a claim after the MAC preserved the performance bond for an additional six months after January 31, 1990, so that any unsecured creditor of AMM, including Green Electric, could assert a claim under the bond. Even with the extension of time of six months that the bond was held open, Green Electric made no claim, satisfied only to bring a direct suit against the MAC.

Green Electric contends, and the trial court held, that the contract between the MAC and AMM was a public works contract. However, public bidding was not required here any more than it was in *Hubbard Broadcasting v. Metropolitan Sports*, 381 N.W.2d 842 (Minn.1986), and the rule applied in *Hubbard* should be applied here.

It is my view that the work, and lease, as in *Hubbard*, was private, not public, and the MAC fully protected Green Electric by its performance bond incorporating the terms and conditions of the agreement.

Thus, AMM's failure to pay Green Electric constituted a default of the concession agreement and Green Electric was protected from this default under the performance bond and should have pursued the surety.

The trial court granted Green Electric summary judgment against the MAC. While the matter was submitted on stipulated facts, neither the facts nor conclusions acknowledge that the performance bond incorporated the terms of the Terminal Facilities Display Agreement which fully protected Green Electric. The performance bond is a part of the record, without objection, and speaks for itself. (A–179)

Here, by applying ordinary contract law, Green Electric unreasonably delayed in asserting a claim—in asserting what is better called a known right—and should not be permitted to prevail against the MAC. *See Klapmeier v. Town of Center*, 346 N.W.2d 133, 137 (Minn.1984). As a result, the MAC has been prejudiced by being denied the protection of the performance bond, now expired, which was entered into to protect creditors, such as Green Electric. *See Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). Green Electric did not act in a diligent manner. Its claim is stale.

I contend that it is unnecessary to remand the case to determine if AMM was or is insolvent. The trial court should be reversed and summary judgment entered in favor of the MAC, dismissing the complaint.