SHAW INDUSTRIES, INC., Plaintiff-Appellant, v. COMMUNITY COLLEGE DISTRICT No. 515, also known as Prairie State College, Defendant-Appellee.

First District (2nd Division)   No. 1—99—4076

Opinion filed December 12, 2000.—Rehearing denied January 17, 2001.

James T. Rohlfing and Seth N. Kaberon, both of Friedman, Sinar & Rohlfing, of Chicago, for appellant.

Raymond A. Hauser and Susan W. Glover, both of Scariano, Ellch, Himes, Sraga & Petrarca, Chtrd., of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, subcontractor Shaw Industries, Inc. (Shaw), filed an amended complaint against defendant, Community College District No. 515, also known as Prairie State College (Prairie State College), alleging breach of contract arising from Prairie State College's failure to require the procurement of a payment bond from its contractor, now bankrupt, Prairie State Associates, Inc. (PSA), pursuant to the Illinois Public Construction Bond Act (30 ILCS 550/1 *et seq.* (West 1998)) (Bond Act). Prairie State College filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), which the trial court granted without prejudice. Thereafter, Shaw filed a motion to reconsider. The trial court denied Shaw's motion and dismissed Shaw's cause with prejudice without leave to amend. Shaw appealed.

On appeal, Shaw, the subcontractor, principally contends that the trial court committed reversible error in dismissing its amended complaint because (1) plaintiff was a third-party beneficiary authorized to bring the cause of action pursuant to section 1 of the Bond Act (30 ILCS 550/1 (West 1998)), and (2) plaintiff's breach of contract suit against the defendant, a public entity, is not subject to the six-month limitations period in section 2 of the Bond Act (30 ILCS 550/2 (West 1998)). Shaw also alleges that it is entitled to recover from Prairie State College pursuant to the Local Government Prompt Payment Act (Prompt Payment Act) (50 ILCS 505/9 (West 1998)).

BACKGROUND

In its amended complaint, Shaw states that it is in the business of manufacturing and selling materials, including carpeting. PSA, now bankrupt, was in the business of selling and installing carpeting and other materials manufactured by other companies. In December 1996, PSA ordered carpeting and related materials from Shaw so that PSA could fulfill its obligation to Prairie State College pursuant to purchase order number 31974, dated August 21, 1996.

The purchase order was for 465 yards of carpet, including installation. The cost listed on the purchase order was $14,800. It was addressed to Don Sullivan of PSA, Inc., from Ray Marthaler of Prairie State College. Shaw also alleges that Prairie State College had prior dealings with PSA and was familiar with the fact that PSA purchased, as opposed to manufactured, carpeting.

Additional allegations by Shaw include the following: that it fully performed all of its obligations and that it last furnished material to PSA on or about February 21, 1997; that Prairie State College claims to have paid PSA all public funds appropriated for the project; that PSA owes Shaw $25,877.28 plus interest; and that, pursuant to the Bond Act, Prairie State College, a political subdivision, was obligated to require a payment bond from PSA to ensure payment to all of PSA's subcontractors that furnished labor and/or materials in connection with purchase order number 31974.

On August 1, 1997, Shaw served Prairie State College and PSA with a "Notice Of Claim For Lien Against Public Funds And Claim On Contractor's Bond." In a letter dated August 4, 1997, Prairie State College advised Shaw that no payment bond had been obtained.

Shaw also contends that had Prairie State College obtained a payment bond from PSA, as required by section 1 of the Bond Act to guarantee payment for the materials used in connection with a public improvement, then Shaw would have been able to recover under said bond for the materials it provided to the now-bankrupt PSA. Shaw further contends that it should be able to recover under the Prompt Payment Act.

Prairie State College moved to dismiss Shaw's amended complaint alleging that plaintiff's complaint asserted a cause of action for breach of contract yet also implied violations under the Bond Act. Specifically, defendant's motion asserted that: (1) plaintiff cannot assert a breach of contract claim as [it is] not in privity of contract for the contract at issue; (2) plaintiff has exceeded the statute of limitations to file for payment under the Bond Act; (3) the Prompt Payment Act does not apply to claims brought by subcontractors against public bodies; and (4) the doctrine of *laches* should apply here as Prairie State College has already completed its budget and levy and paid the contractor for the work at issue and, therefore, should not be required to pay a claim that did not come in a timely manner. On appeal, Shaw contests allegations (1), (2) and (3).

We affirm.

## ANALYSIS

### I

■ When a complaint is dismissed pursuant to section 2—615 of

the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), the standard of review is *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997). The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon*, 179 Ill. 2d at 344, 688 N.E.2d at 1175. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that entitle the plaintiff to recover. *Vernon*, 179 Ill. 2d at 344, 688 N.E.2d at 1175.

## A

Shaw contends that the trial court committed reversible error in dismissing its amended complaint under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), because Shaw was a third-party beneficiary authorized to bring the cause of action pursuant to section 1 of the Bond Act (30 ILCS 550/1 (West 1998)), and also because its breach of contract suit against the defendant, a public entity, is not subject to the six-month limitations period in section 2 of the Bond Act (30 ILCS 550/2 (West 1998)).

Section 1 of the Bond Act (30 ILCS 550/1 (West 1998)) provides:
> "Except as otherwise provided by this Act, *all officials, boards, commissions or agents of this State, or of any political subdivision* thereof *in making contracts for public work of any kind to be performed for the State, or a political subdivision* thereof *shall require every contractor* for such work *to furnish, supply and deliver a bond to the State, or to the political subdivision* thereof entering into such contract, as the case may be, with good and sufficient sureties. *The amount of such bond* shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, *shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor* or otherwise." (Emphasis added.) 30 ILCS 550/1 (West 1998).

Here, section 1 of the Bond Act provides that the public entity "*shall require* every contractor for such work to furnish, supply and deliver a bond to the State *** with good and sufficient sureties." (Emphasis added.) 30 ILCS 550/1 (West 1998). This language is clear and unambiguous.

The use of the word "shall" generally connotes a mandatory reading. *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838, 846-47, 710 N.E.2d 106, 111-12 (1999). Moreover, a court must construe a statute as it is written and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions,

substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute. *Superior Structures Co. v. City of Sesser*, 292 Ill. App. 3d 848, 852, 686 N.E.2d 710, 713 (1997).

Further, as a remedial statute, the Bond Act is liberally construed to effectuate the General Assembly's intent to encourage and protect artisans, materialmen, and tradesmen. *East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.*, 235 Ill. App. 3d 756, 759-60, 601 N.E.2d 972, 974 (1992). Because the Bond Act was established to achieve the same remedial goal as the mechanic's lien in a public works situation, it follows that the Bond Act should be read into public works contracts between the public entity and the general contractor requiring the procurement of a payment bond. *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901, 904 (C.D. Ill. 1987); *East Peoria*, 235 Ill. App. 3d at 760, 601 N.E.2d at 974.

In *Western Waterproofing*, subcontractors brought an action against the housing authority asserting their rights as third-party beneficiaries of a provision of the general contract that required the general contractor to provide a performance bond. *Western Waterproofing*, 669 F. Supp. 901. The ultimate issue in *Western Waterproofing* was "[w]hether a third-party beneficiary contract action could be asserted by an unpaid subcontractor against a public entity where such entity has failed to procure from the general contractor a payment bond as required by the Illinois Bond Act." *Western Waterproofing*, 669 F. Supp. at 902. The court answered that question affirmatively.

In that case, plaintiffs were subcontractors for a federally funded construction project for defendant, Springfield Housing Authority (SHA). SHA entered into an agreement with Bildoc, the general contractor, for the waterproofing and weatherizing of five high-rise apartment buildings. The general contractor then entered into contracts with various subcontractors, which included plaintiff Western Waterproofing Company and plaintiff Mid-Continental Restoration Company, Inc. Both plaintiffs contributed labor and materials toward the completion of the project. Both plaintiffs were to receive payment 63 days from completion of the project. The work was completed and final payment, minus retainage, was made to Bildoc. Western Waterproofing was to receive $129,000 under its agreement with Bildoc and Mid-Continental was to be paid $22,456 pursuant to its agreement with Bildoc, but neither received payment for the work performed.

Plaintiffs filed a complaint and secured a default judgment against Bildoc but were unable to collect. Plaintiffs resumed proceedings

against SHA. Counts of plaintiffs' complaint which alleged that the plaintiffs were third-party beneficiaries of SHA's contract with Bildoc were the subject matter of cross-motions for summary judgment in the case. *Western Waterproofing*, 669 F. Supp. at 902.

The plaintiffs based their claim that they were third-party beneficiaries of the contract between SHA and Bildoc on a provision in the general contract:

"PERFORMANCE AND PAYMENT BOND

A performance bond in the amount of total amount of contract for cost of installation of windows will be furnished to the authority as a separate cost item and will be added to the contract price. After the first shipment of windows and payment thereof by SHA, the Contractor shall provide SHA with a Waiver of Lien against all materials on site." *Western Waterproofing*, 669 F. Supp. at 902-03.

SHA failed to procure a payment bond or a performance bond from Bildoc. The *Western Waterproofing* court found that "*[t]he Act contains mandatory language directing the requirement of a payment bond to protect materialmen and subcontractors.*" (Emphasis added.) *Western Waterproofing*, 669 F. Supp. at 903. The court further stated that, "[u]nder Illinois law, 'statutory provisions applicable to a contract are deemed to form a part of that contract and must be construed in connection therewith.' " *Western Waterproofing*, 669 F. Supp. at 903, quoting *DC Electronics, Inc. v. Employers Modern Life Co.*, 90 Ill. App. 3d 342, 348, 413 N.E.2d 23 (1980).

■ In determining that plaintiffs were third-party beneficiaries under the contract to procure a bond where no bond had been procured, the court in *Western Waterproofing* stated that the general rule is well settled: "If the contract is entered into for the direct benefit of a third person, not a party to the contract, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct or incidental. If direct, he may sue on the contract. If incidental, there is no right of recovery." *Western Waterproofing*, 669 F. Supp. at 904, citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E.2d 498 (1931).

The Illinois Appellate Court, in *East Peoria*, followed the ruling in *Western Waterproofing*. In *East Peoria*, subcontractors, who were working on school remodeling projects, sued the school district to collect on amounts unpaid by the general contractor. The circuit court entered judgment for the subcontractors and the school district appealed. *East Peoria*, 235 Ill. App. 3d 756, 601 N.E.2d 972.

In *East Peoria*, the plaintiff school district contracted with the general contractor, Tousley-Iber, to oversee a life safety survey and related improvements of some high school buildings. The general

contractor hired defendant Union Roofing for roof work, defendant PIPCO Company, Ltd., for plumbing work, defendant Grand Stage Lighting for stage renovation work, and defendant Shick Supply & Equipment Company for locker replacement. All of the subcontractors performed the work under their respective contracts. Plaintiff made progress payments to the contractor but the contractor did not make payments to defendant Grand Stage Lighting or defendant Shick. The contractor paid Union Roofing and PIPCO for part of the work they performed. *East Peoria*, 235 Ill. App. 3d at 758, 601 N.E.2d at 973.

Litigation ensued between the parties. At issue in *East Peoria* were the claims by the subcontractors that they were third-party beneficiaries of the agreement between plaintiff and the contractor and also that the Bond Act mandated that plaintiff require the contractor to obtain a payment bond. The trial court granted each defendant's motion for summary judgment and held, *inter alia*, that the contract was subject to the Bond Act and that the subcontractors were third-party beneficiaries of the contract between plaintiff and the contractor. *East Peoria*, 235 Ill. App. 3d at 758, 601 N.E.2d at 973. As a result of the court's subsequent order entered pursuant to the parties' stipulations, defendants Union Roofing, Grand Stage, and PIPCO received partial payment against their lien claims but monies were still due. The plaintiff appealed. *East Peoria*, 235 Ill. App. 3d at 759, 601 N.E.2d at 973-74.

On appeal, the appellate court held, *inter alia*, that the Bond Act mandated that the school district require the general contractor to provide a payment bond covering subcontractors and also that subcontractors were third-party beneficiaries of the payment bond provided for in the contract. *East Peoria*, 235 Ill. App. 3d at 759-62, 601 N.E.2d at 974-75. The *East Peoria* court also stated that it would be meaningless to read the Bond Act requirements into the construction manager agreement, where the contractor agreed to pay all amounts due the trade contractors upon receipt of payment from the plaintiff and to submit satisfactory evidence that all indebtedness had been paid, without reading in third-party rights to enforce the statute. *East Peoria*, 235 Ill. App. 3d at 761, 601 N.E.2d at 975.

In our view, *Western Waterproofing* and *East Peoria* are instructive but are not analogous to the instant case because, although no bond was obtained in either of those cases, both *Western Waterproofing* and *East Peoria* held that the contracts entered into by the parties in those cases were entered into for the direct benefit of a third person. *Western Waterproofing*, 669 F. Supp. at 904; *East Peoria*, 235 Ill. App. 3d at 761-62, 601 N.E.2d at 975-76. Thus, the contracts in both of those cases constituted a basis for adjudging the subcontractors in those

cases to be third-party beneficiaries. In the instant case, in contradistinction to those cases, the contract between PSA and Prairie State College does not contain any provision indicating that the contract is entered into for the direct benefit of a third person.

Because of this distinction, Prairie State College in the instant case contends that Shaw was not an anticipated beneficiary under the contract and, therefore, has no standing to bring the actions. We agree that Shaw is not a direct beneficiary under the contract pursuant to the purchase order contract between PSA and Prairie State College. However, in the instant case, Shaw alleges in the amended complaint in pertinent part:

> "(10) Pursuant to section 1 of the Illinois Public Construction Bond Act [citation], the College was obligated to provide a payment bond to assure payment to all subcontractors of PSA [including Shaw Industries] that would furnish labor or materials to be used in connection with PSA's performance of its obligations under the College's purchase order no. 31974."

■ While Prairie State College argues that Shaw was not a third-party beneficiary contemplated under the purchase order contract, "[t]he College does not contest that the provisions of the Bond Act are read into, and deemed a part of, every contract in Illinois in which the requirements apply." Thus, no issue exists in the instant case that a third-party beneficiary contract action can be asserted by an unpaid subcontractor against a public entity where such public entity has failed to procure from the general contractor a payment bond as required by the Bond Act. See *Western Waterproofing,* 669 F. Supp. at 902. Shaw's complaint alleges that Shaw was a third-party beneficiary authorized to bring the cause of action pursuant to the Bond Act. We hold that the court erred in dismissing Shaw's complaint for failure to state a cause of action. *Vernon,* 179 Ill. 2d at 344, 688 N.E.2d at 1175.

### B

Prairie State College contends that, even as a third-party beneficiary, however, Shaw is required to file the cause of action within the time constraints set forth in the Bond Act and that Shaw has failed to assert its claim in a timely manner. However, Shaw contends that because Prairie State College failed to procure a bond as mandated by section 1 of the Bond Act (30 ILCS 550/1 (West 1998)), it was not required to comply with the six-month limitations period mandated under section 2 of the Bond Act. We disagree with Shaw's contention.

■ Section 2 of the Bond Act (30 ILCS 550/2 (West 1998)) provides, in pertinent part:

> "[T]hat *any person having a claim for labor, and material as aforesaid shall have no such right of action unless he shall have filed a*

*verified notice of said claim with the officer, board, bureau or department awarding the contract, within 180 days after the date of the last item of work or the furnishing of the last item of materials, and shall have furnished a copy of such verified notice to the contractor within 10 days of the filing of the notice with the agency awarding the contract.*

\* \* \*

Provided, further, that *no action shall be brought until the expiration of 120 days after the date of the last item of work or the furnishing of the last item of materials, \*\*\* nor shall any action of any kind be brought later than 6 months after the acceptance by the State or political subdivision thereof of the building project or work."* (Emphasis added.) 30 ILCS 550/2 (West 1998).

Shaw alleges that it last furnished material to PSA on or about February 27, 1997. On August 1, 1997, Shaw served Prairie State College and PSA with its "Notice Of Claim For Lien Against Public Funds And Claim On Contractor's Bond." On August 4, 1997, Prairie State College's director of business services and controller responded to Shaw by advising Shaw, in a letter, that no bond existed: "This letter confirms that no bond was obtained for the Prairie State Associates carpet installation project at Prairie State College (6616-621)." The record does not indicate what "6616-621" denotes. Shaw filed suit against Prairie State College on August 18, 1998, for breach of contract as a third-party beneficiary under the college's contract with PSA.

Relative to Shaw's contention that its breach of contract claim is not subject to the six-month limitations period, Shaw cites no Illinois cases. Rather, Shaw urges our court to follow a 1992 decision by the Court of Appeals of Minnesota in *Green Electric Systems, Inc. v. Metropolitan Airports Comm'n*, 486 N.W.2d 819 (Minn. App. 1992). However, for the following reasons, we decline to do so.

In *Green Electric*, the Court of Appeals of Minnesota affirmed the district court's grant of summary judgment in the subcontractor's, Green Electric's, favor because the public entity, Metropolitan Airports Commission, failed to obtain a payment bond as required under Minnesota's equivalent of the Bond Act. *Green Electric*, 486 N.W.2d at 823. The *Green Electric* court reasoned that, because the public entity failed to obtain a payment bond as required under section 574.28 of the Minnesota bond act (Minn. Stat. § 574.28 (1990)), Green Electric was not required to perform the preconditions for a bond that did not exist. *Green Electric*, 486 N.W.2d at 823. In a majority decision, the Court of Appeals of Minnesota affirmed the grant of summary judgment in Green Electric's favor but remanded the case on the limited issue of determining whether Green Electric sustained a loss. *Green*

*Electric,* 486 N.W.2d at 823-24. The Court of Appeals of Minnesota stated that a loss could be shown by proving that the contractor was insolvent and unable to pay the debt at the time of default. *Green Electric,* 486 N.W.2d at 823-24.

However, we note that, at the time *Green Electric* was written, a provision of section 574.28 of the Minnesota statute provided that, if a bond were not obtained, the public body would be liable for any loss. Section 574.28 (Minn. Stat. § 574.28 (1990)) then provided:

> *"If such bond be not taken, the corporation or body for which work is done under the contract shall be liable to all persons furnishing labor, skill or material to the contractor thereunder for any loss resulting to them from such failure.* No assignment, modification, or change of the contract, or change in the work covered thereby, nor any extension of time for completion of the contract, shall release the sureties on the bond." (Emphasis added.)

*Green Electric,* 486 N.W.2d at 821 n.2, citing Minn. Stat. § 574.28 (1990). *Green* is inapposite because no provision similar to section 574.28 of the Minnesota bond act has been presented in the Illinois Bond Act. Moreover, section 574.28 of the Minnesota bond act was amended in 1994, effective August 1, 1995, and the language on which Shaw has placed reliance has been deleted. See Minn. Stat. § 574.28 (2000).

Finally, an instructive case on the limitation issue is *Concrete Structures of the Midwest, Inc. v. Fireman's Insurance Co.,* 790 F.2d 41 (7th Cir. 1985). In *Concrete Structures,* a subcontractor brought an action for lost profits against the surety on a payment and performance bond for a public works project. The surety moved to dismiss the complaint for failure to comply with the Illinois Bond Act's six-month limitations provision. The United States District Court, Northern District of Illinois, granted the motion. The subcontractor appealed. The Seventh Circuit Court of Appeals affirmed and held that the action was barred by the six-month limitations period, notwithstanding the fact that the bond provided coverage in addition to that mandated by Act. *Concrete Structures,* 790 F.2d at 43.

In *Concrete Structures,* the court wrote:

> "The 'Act provides for the procedure which must be followed by a person seeking to enforce liability under the bond which a contractor must give. Such procedure is specifically detailed in plain language in Section 2 of the Act.' [Citation] (compliance with § 2 is a jurisdictional requirement for suit on a bond furnished pursuant to § 1)." *Concrete Structures,* 790 F.2d at 43.

■ In the instant case, Shaw's third-party beneficiary action is

predicated solely upon section 1 of the Bond Act (30 ILCS 550/1 (West 1998)). However, the Bond Act must be read as a whole. In particular, section 1 of the Bond Act must be read in conjunction with section 2 of the Bond Act (30 ILCS 550/2 (West 1998)). Section 2 sets forth the procedure which must be followed by a person seeking to enforce liability under section 1 of the Bond Act. Compliance with the limitations period in section 2 of the Bond Act is a jurisdictional requirement. *Concrete Structures*, 790 F.2d at 42. Shaw failed to comply with the six-month limitations period to file suit in section 2 of the Bond Act. Accordingly, the trial court did not err in dismissing the plaintiff's complaint with prejudice.

## II

In addition to the foregoing issues, Shaw has asserted that it is entitled to recover against Prairie State College pursuant to section 9 of the Prompt Payment Act (50 ILCS 505/9 (West 1998)). However, in our view, Shaw has no claim under the Prompt Payment Act.

Section 9 of the Prompt Payment Act, in pertinent part, provides:

> "If the *contractor*, without reasonable cause, *fails to make any payment to his subcontractors* and material suppliers within 15 days after receipt of payment under the public construction contract, *the contractor shall pay to his subcontractors* and material suppliers, in addition to the payment due them, interest in the amount of 2% per month, calculated from the expiration of the 15-day period until fully paid." (Emphasis added.) 50 ILCS 505/9 (West 1998).

Shaw contends that it is entitled to the same relief against Prairie State College as would be available under Shaw's contract with PSA. Shaw also states that PSA received final payment from Prairie State College "in or about" December 1996, but failed to make any payments to Shaw.

In interpreting a statute, a court's role is to ascertain and give effect to the intent of the legislature, which is determined in the first instance by examining the language of the statute. *Superior Structures*, 292 Ill. App. 3d at 850-51, 686 N.E.2d at 712. Moreover, if the statutory language is clear and unambiguous, then the court must enforce it as written and may not resort to other aids for construction. *Superior Structures*, 292 Ill. App. 3d at 851, 686 N.E.2d at 712.

In our view, as contended by Prairie State College, the Act limits the rights of subcontractors working on the public bodies to seek payment from the contractor, not the public body.

In the instant case, Prairie State College paid PSA all amounts due it. All of the cases cited by Shaw to support its claim on this issue

are inapposite because they either involve direct actions brought on a contract by contractors or actions brought by others on a contractor's surety bond seeking payment. *United States ex rel. Sherman v. Carter,* 353 U.S. 210, 1 L. Ed. 2d 776, 77 S. Ct. 793 (1957) (action by trustees of health and welfare fund against surety on contractor's bond); *D&L Construction Co. v. Triangle Electric Supply Co.,* 332 F.2d 1009 (8th Cir. 1964) (action by subcontractor's project supplier to recover on contractor's Capehart bond); *Superior Structures,* 292 Ill. App. 3d 848, 686 N.E.2d 710 (contractor hired to resurface city streets brought breach of contract action against city seeking monies owed on contract and interest under the Prompt Payment Act).

For the foregoing reasons, the trial court's dismissal of Shaw's amended complaint is affirmed.

Affirmed.

McNULTY, P.J., and McBRIDE, J., concur.