In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1650

A.E.I. Music Network, Inc.,

Plaintiff-Appellant,

v.

Business Computers, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CV 6097--George M. Marovich, Judge.

Argued November 7, 2001--Decided May 22, 2002

   Before Flaum, Chief Judge, and Posner and
Kanne, Circuit Judges.

   Posner, Circuit Judge.  This appeal by
A.E.I. Music Network, Inc., a
subcontractor, from the dismissal of its
diversity suit against the Chicago Board
of Education (the other defendants having
dropped out of the case) presents
questions of Illinois contract and
construction law. The Board had hired
Business Computers, Inc. (BCI) to install
an audio-visual system in a high school,
and BCI had subcontracted a part of the
job to A.E.I. A.E.I. did the work called
for in the subcontract but was not paid
by BCI, which is broke. The Illinois Bond
Act requires a public entity such as the
Chicago Board of Education to require its
contractors to post bonds to assure the
payment of any money owed by the
contractors to their subcontractors. 30
ILCS 550/0.01 et seq.; MQ Construction
Co. v. Intercargo Ins. Co., 742 N.E.2d
820, 825 (Ill. App. 2000); Shaw
Industries, Inc. v. Community College
Dist. No. 515, 741 N.E.2d 642, 645, 647
(Ill. App. 2000); Aluma Systems, Inc. v.
Frederick Quinn Corp., 564 N.E.2d 1280,
1297 (Ill. App. 1990). The Board, in
violation of the Act, failed to require
BCI to post a bond; no bond was posted;
and as a result A.E.I. could not turn to
a surety when it was stiffed by BCI. Out
$159,000, it brought this suit, charging
that the statutory requirement of a bond

was an implied-by-law term of the contract between the Board and BCI that it can enforce as a third-party beneficiary, and also seeking to impress a mechanic's lien, 770 ILCS 60/23; R.W. Dunteman Co. v. C/G Enterprises, Inc., 692 N.E.2d 306, 313 (Ill. 1998); MQ Construction Co. v. Intercargo Ins. Co., supra, 742 N.E.2d at 825, on any funds that the Board has set aside to pay BCI on the contract. The district judge dismissed the breach of contract claim as barred by the 180-day statute of limitations in the Bond Act and dismissed the mechanic's lien claim as barred by an admission by A.E.I. that the Board had paid BCI all that was owing it before A.E.I. filed the notice of lien.

   The applicability of the 180-day statute of limitations to a suit by a subcontractor complaining about a public agency's having failed to require the contractor to post a bond has divided Illinois's intermediate appellate court. Shaw Industries, Inc. v. Community College Dist. No. 515, supra, 741 N.E.2d at 648, holds that the 180-day limitation, though found in the Bond Act rather than in the common law of contract, is applicable to such a suit because the suit however captioned is necessarily a suit to enforce the Act. Id. at 649. East Peoria Community High School Dist. No. 309 v. Grand Stage Lighting Co., 601 N.E.2d 972, 975 (Ill. App. 1992), implies that the 180-day period is inapplicable, because the court described the subcontractor's suit against the agency as a third-party-beneficiary suit for breach of contract rather than as a suit under the Bond Act. We think this is clearly right and that the Supreme Court of Illinois would so hold if presented with the issue.

   The requirement of posting a bond is found in section 1 of the Bond Act, 30 ILCS 550/1. The 180-day statute of limitations is found in section 2. Id., 550/2. That statute of limitations is applicable, however, by the very terms of section 2, only to "a claim for labor, and material[,] as aforesaid"--and the claim to which "aforesaid" refers, further up in the section, is "the right to sue on such bond," that is, the bond required by section 1. Section 2 couldn't be clearer: "every person furnishing material or performing labor, either as

an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond or letter of credit shall be executed as provided in this Act, shall have the right to sue on such bond or letter of credit in the name of the State." 30 ILCS 550/2 (emphasis added).

In short, the 180-day statute of limitations is applicable only to a suit on the bond. A.E.I.'s suit against the Board of Education is not a suit on the bond. There is no bond, and so the statute is inapplicable. Cf. Arvanis v. Noslo Engineering Consultants, Inc., 739 F.2d 1287, 1290 (7th Cir. 1984) (per curiam). It is doubly inapplicable, because section 2 requires suits under it to be brought in the name of the public entity that let the contract, so that if A.E.I. had to sue the Board under the Bond Act to obtain a remedy for the Board's violation of the Act, it would be suing the Board in the name of the Board. The suit would be styled Chicago Board of Education ex rel. A.E.I. Music Network, Inc. v. Chicago Board of Education. Absurd.

The Board concedes that violations of section 1 of the Bond Act were not intended to be remediless. But it rightly insists that the remedy cannot be a suit on a nonexistent bond. Nor is there any indication of a statutory remedy except under the mechanic's lien statute, and the remedy under that statute is unavailable if the public entity that should have required a bond for the protection of subcontractors has already paid the contractor, at least if the subcontractor failed, as A.E.I. did, to notify the public entity before it paid the contractor. See 770 ILCS 60/23(b); Walker Process Equipment v. Advance Mechanical Systems, Inc., 668 N.E.2d 132, 134 (Ill. App. 1996); Board of Library Trustees v. Cinco Construction, Inc., 658 N.E.2d 473, 477, 480-81 (Ill. App. 1995).

The natural remedy in such a case is a suit for breach of contract by the subcontractor against the public entity. The requirement of posting a bond found in section 1 of the Bond Act is read into every construction contract of a public entity, Shaw Industries, Inc. v. Community College Dist. No. 515, supra, 741 N.E.2d at 645; East Peoria Community

High School Dist. No. 309 v. Grand Stage Lighting Co., supra, 601 N.E.2d at 975, precisely to give the subcontractor a remedy; and thus it became a term of the contract between the Chicago Board of Education and BCI. Because the term isintended for the benefit of the prime contractor's subcontractors, the doctrine of third-party beneficiaries entitled A.E.I. to sue to enforce it in a suit for breach of contract. And as a suit for breach of a construction contract, A.E.I.'s suit against the Board was governed by a 4-year, not the 180-day, statute of limitations. 735 ILCS sec. 5/13-214(a); Litchfield Community Unit School Dist. No. 12 v. Speciality Waste Services, Inc., 757 N.E.2d 641, 643-44 (Ill. App. 2001); Blinderman Construction Co. v. Metropolitan Water Reclamation Dist. of Greater Chicago, 757 N.E.2d 931, 934 (Ill. App. 2001). So the suit was not time-barred.

Against this conclusion the Board argues that A.E.I. was merely an "incidental" and not a "direct" beneficiary of the Board's contract with BCI. Third parties, that is, persons who are not parties to a contract, are permitted to enforce the contract if and only if the parties made clear in the contract an intention that they be permitted to do so. XL Disposal Corp. v. John Sexton Contractors Co., 659 N.E.2d 1312, 1316 (Ill. 1995); A.J. Maggio Co. v. Willis, 738 N.E.2d 592, 599 (Ill. App. 2000); Swavely v. Freeway Ford Truck Sales, Inc., 700 N.E.2d 181, 185 (Ill. App. 1998); Sufrin v. Hosier, 128 F.3d 594, 598 (7th Cir. 1997) (Illinois law). When that condition is fulfilled, permitting third-party-beneficiary suits is consistent with freedom of contract, and also reduces transaction costs by conferring rights (though of course not liabilities) on persons without requiring the persons to become involved in the contractual negotiations. Others may benefit if the contract is performed-- that is common enough-- but they cannot sue to enforce it just by virtue of benefiting from it. That would take contractual enforcement right out of the hands of the parties. Those other beneficiaries, who have no rights, are called "incidental" beneficiaries, the "direct" ones being those who are permitted to enforce the contract because the contract authorized them to do so. See, e.g., Altevogt v. Brinkoetter, 421

N.E.2d 182, 187-88 (Ill. 1981); Nikolic v. Seidenberg, 610 N.E.2d 177, 180 (Ill. App. 1993); Ball Corp. v. Bohlin Bldg. Corp., 543 N.E.2d 106, 107 (Ill. App. 1989); Golden v. Barenborg, 53 F.3d 866, 870 (7th Cir. 1995) (Illinois law); Hunter v. Old Ben Coal Co., 844 F.2d 428, 432 (7th Cir. 1988) (ditto); Vidimos, Inc. v. Laser Lab Ltd., 99 F.3d 217, 220 (7th Cir. 1996).

In a case such as this, in which the legislature interpolates a contractual term that the parties are not free to vary, the relevant intentions are no longer those of the parties but those of the legislature. The Illinois legislature wants construction contracts made by public entities to protect the subcontractors. It must have realized that the only persons who would have a financial interest in enforcing a term forced on the contracting parties for the protection of the subcontractors would be--the subcontractors. So the carrying out of the purposes of the contract, one purpose being that of the legislature to protect subcontractors, requires that the subcontractors be able to enforce the contract. Nothing more is required to make them "direct" third-party beneficiaries, entitled to sue.

The fact that A.E.I. was not named in the contract is thus irrelevant. E.g., Altevogt v. Brinkoetter, supra, 421 N.E.2d at 187; LaGrange Memorial Hospital v. St. Paul Ins. Co., 740 N.E.2d 21, 27-28 (Ill. App. 2000); Hunter v. Old Ben Coal Co., supra, 844 F.2d at 432 (Illinois law). It was not named simply because the relevant term is a product of legislation rather than of contractual negotiation and so designates a class rather than named members of the class-- all subcontractors, not named subcontractors, which would be a very questionable form of legislation. The class indisputably includes A.E.I.

Might there be some basis for subjecting the implied provision of the contract requiring the posting of a bond to the 180-day statute of limitations in the Bond Act, when the rest of the contract is subject to a 4-year statute of limitations? None is suggested, and we cannot think of any ourselves. The reason for the short statute of limitations in the Bond Act may be that the public

entity which let the contract and required the contractor to post a bond has an interest in minimizing the cost of the bond (which is likely to be passed on to the public entity in the form of a higher contract price) by protecting sureties against late claims. That interest falls away when there is no bond and so no surety in the picture. Or the reason for the short statute of limitations may be to enable the prime contractor to get paid sooner, since until the bond expires the public agency may be reluctant to pay him lest the subcontractors seek a remedy against the agency. That interest also is not engaged when there is no bond.

At the oral argument of the appeal the Board's lawyer surprised us by arguing that A.E.I.'s suit is barred by the principle that contracts implied in fact cannot be enforced against public entities. The argument was waived by not being made in the Board's brief, but is in any event without merit because the contract between the Board and BCI was not one implied in fact; it was an express contract with an implied term. A contract implied in fact is not an express contract that may have, as most contracts do, implied terms, such as the duty of good faith, which is read into every contract governed by Illinois law, e.g., J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc., 642 N.E.2d 1215, 1222 (Ill. 1994); Martindell v. Lake Shore National Bank, 154 N.E.2d 683, 690 (Ill. 1958). Instead, "an implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." Overseas Development Disc Corp. v. Sangamo Construction Co., 840 F.2d 1319, 1330 (7th Cir. 1988) (Illinois law). Suppose a person walks into a store and takes a newspaper that is for sale there, intending to pay for it. The circumstances would create a contract implied in fact. See People v. Dummer, 113 N.E. 934, 935 (Ill. 1916); Restatement (Second) of Contracts sec. 4, comment a, illustration 2 (1979). Were there no basis for inferring an intention to pay, there would be no contract,

though the store owner would have a remedy in restitution, also though confusingly called in this context "quasi-contract" or "contract implied in law." See, e.g., In re De Laurentiis Entertainment Group Inc., 963 F.2d 1269, 1272 (9th Cir. 1992); Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C. Cir. 1973).

The reluctance to enforce contracts implied in fact against public agencies, like the parallel reluctance to apply notions of estoppel against such agencies, Cities Service Oil Co. v. City of Des Plaines, 171 N.E.2d 605, 607 (Ill. 1961); Monat v. County of Cook, 750 N.E.2d 260, 270 (Ill. App. 2001), is motivated by concern with, and is limited to, situations in which the application of the doctrine might permit a public employee to bind his employer contrary to a statute or regulation governing public contracts. See, e.g., Stone v. City of Arcola, 536 N.E.2d 1329, 1339-40 (Ill. App. 1989); South Suburban Safeway Lines, Inc. v. Regional Transportation Authority, 519 N.E.2d 1005, 1008-09 (Ill. App. 1988). That is not what happened here.

So A.E.I.'s contract claim was incorrectly rejected on statute of limitations grounds and we turn now to its mechanics-lien claim. A lien is a method of attaching, in effect freezing, some designated property or fund, and so if there is no property or fund for the lien to seize hold of, there can't be a lien. Hence the requirement that we mentioned at the outset that notice of a lien be filed while the person against whom it is filed still has the property or fund in his possession. See also People ex rel. Anderson v. Village of Bradley, 11 N.E.2d 415, 418 (Ill. 1937); Wilbur Waggoner Equipment Rental & Excavating Co. v. Johnson, 342 N.E.2d 266, 269 (Ill. App. 1975). The district court read A.E.I.'s complaint to admit that when it filed its lien against the Board the Board had already paid BCI in full. Well, the complaint says that, all right, but then goes on to contradict itself by stating that "upon information and belief, AEI believes that at the time of service of its Subcontractor's Claims for Lien there may have been monies, bonds or warrants due or to become due to BCI from [the Board]." But in its briefs

in this court A.E.I. does not dispute the Board's assertion that the money had indeed been paid in full, and so we shall assume, which nixes the mechanics' lien claim. A.E.I. did not assert a mechanics' lien against the audio-visual system itself, which does of course remain in the Board's possession; we need not consider whether it could have done so.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.