ARDON ELECTRIC COMPANY, INC., *et al.*, Plaintiffs-Appellants, v. WINTERSET CONSTRUCTION, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—03—0957

Opinion filed November 2, 2004.

Louis V. Kiefor, of Calumet City, for appellants.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Kenneth M. Florey and W. Grant Farrar, of counsel), for appellee Village of Merrionette Park.

JUSTICE GARCIA delivered the opinion of the court.

The plaintiffs, Ardon Electric Company, Inc., Airy's, Inc., Carroll Seating Company, J&R Number One in Asphalt Company, Inc., and Knippel Iron, Inc. (collectively plaintiffs), appeal the trial court's February 23, 2003, order dismissing their third-party-beneficiary claims directed against the defendant Village of Merrionette Park (Village) as time-barred under section 2 of the Public Construction Bond Act (Bond Act) (30 ILCS 550/2 (West 1998)). Specifically, the plaintiffs argue the claims were based on a breach of contract and the Bond Act's statute of limitations does not apply. We agree and reverse.

## I. Background

On December 1, 1999, the Village entered into a contract (general contract) with Winterset Construction, Inc. (Winterset), for the construction of a new police station in the Village. Thereafter, Winterset entered into contracts with the plaintiffs, as subcontractors, to perform the work required under its contract with the Village. The pleadings present no dispute that the plaintiffs completed the work in compliance with the contract but were not paid in full for their services. Winterset is not a party to this appeal.

The plaintiffs served notice of their claims for money due on the Village and Winterset and were advised by the Village that no payment bond was available. Individually, the plaintiffs sued the Village and Winterset, seeking multiple forms of relief. The dates each plaintiff entered into a contract with Winterset (Entered), the dates those contracts were completed (Completed), the dates each plaintiff filed a notice of lien (Notice), and the dates each plaintiff filed a complaint against the Village (Complaint) are outlined in the table below:

|         | Entered    | *Completed* | *Notice*   | *Complaint* |
|---------|------------|------------|------------|-------------|
| Airy's: | 09/27/2000 | 02/07/2001 | 05/21/2001 | 09/10/2001  |
| Carroll: | 09/18/2000 | 01/19/2001 | 10/26/2001 | 12/11/2001  |
| Ardon:  | 05/28/2000 | 09/01/2001 | 10/23/2001 | 12/13/2001  |
| Knippel: | 04/04/2000 | 01/23/2001 | 11/15/2001 | 12/21/2001  |
| J&R:    | 06/13/2000 | 05/23/2001 | 09/04/01   | 01/30/2003. |

These cases were consolidated with a case filed by Valley Security Company, which is not a party to this appeal.

The Village filed multiple motions to dismiss directed at those counts alleging breach of contract and breach of third-party-beneficiary contract. The Village claimed, through affidavits from Donald Wallin, architect of the police station, and Donald Peck, the Village's building commissioner, that it accepted the new police station as substantially complete on January 25, 2001, and that the station was 100% complete on February 10, 2001, when Wallin approved Winterset's last-payment request. The Village argued that because the plaintiffs either did not file their notice within 180 days after completing their work or file their complaints within 6 months following acceptance, their claims were time-barred under the Bond Act. Additionally, the Village argued that it did not, under the Bond Act, have a duty to require Winterset to obtain a bond.

On February 7, 2003, the trial court entered its findings of fact. The court found that (1) the Village failed to require Winterset to

provide a payment bond; (2) all plaintiffs, except Ardon and J&R, failed to file a notice of claim with the Village within 180 days of completing their contract and therefore had no right of action under the Bond Act; (3) the Village accepted the police station no later than February 22, 2001; and (4) Ardon and J&R filed their complaints more than six months after the police station was accepted and therefore had no right of recovery under the Bond Act. On February 26, 2003, the court granted the Village's motions to dismiss the breach of contract and third-party beneficiary counts. This appeal followed.

## II. Analysis

Before we address the merits of the plaintiffs' appeal, we must first rule on the Village's motion to strike plaintiffs' notice of appeal. The Village argues that because the notice of appeal named five plaintiffs-appellants, but was only signed by one attorney, the notice violates Supreme Court Rule 303 (155 Ill. 2d R. 303).

### A. Motion to Strike Notice of Appeal

■ On March 26, 2003, the plaintiffs filed their notice of appeal. The notice asked this court to reverse the trial court's order dismissing plaintiffs' third-party beneficiary claims. Although each plaintiff was represented by a different attorney in the trial court, the notice of appeal was signed only by Louis V. Kiefor, trial attorney for Knippel. The Village argues plaintiffs are not properly before this court because (1) the notice of appeal designates five appellants but only one attorney signed the notice, and (2) the attorney did not indicate which appellant he represented.

Rule 303(b)(3) mandates that a notice of appeal "shall contain the signature and address of each appellant or appellant's attorney." 155 Ill. 2d R. 303(b)(3). The introduction to the notice of appeal designates "Ardon Electric Company, Inc., Airy's Inc., Carroll Seating Company, J&R Number One in Asphalt Co., and Knippel Iron Inc.," as plaintiffs-appellants. Kiefor signed the notice as "one of the attorneys for plaintiff[s]-appellants."

It is clear from the notice of appeal that Kiefor signed it on behalf of all of the plaintiffs-appellants. The notice identified each plaintiff-appellant and each case number applicable to each plaintiff-appellant. Further, the notice of appeal asks that this court reverse the ruling of the trial court as applicable to each plaintiff-appellant and identified each paragraph of the trial court's order that applies to each plaintiff-appellant. Nothing in the notice of appeal suggests that Kiefor did not represent the interests of all of the plaintiffs-appellants when he filed the notice of appeal. We therefore find no violation of Rule 303.

The cases cited by the Village do not require a different holding.

The court in *U.S. Air, Inc. v. Prestige Tours, Inc.*, 159 Ill. App. 3d 150, 151, 512 N.E.2d 68 (1987), found that "the record is confusing as to which of the 14 present plaintiffs are in fact appealing." The notice of appeal was signed by only one plaintiff; the other plaintiffs neither joined the appeal nor filed their own notice of appeal. Although only one plaintiff signed the notice of appeal, the appellate brief designated seven of the plaintiffs as plaintiffs-appellants. The court dismissed the appeal but its decision was not based solely on the plaintiffs' failure to sign the notice of appeal: the notice of appeal was untimely; the court found that the order being appealed was not final; and questions existed as to whether the plaintiffs were the proper parties to the action. *U.S. Air*, 159 Ill. App. 3d at 153-55. Here, the plaintiffs' notice of appeal was timely and made clear that attorney Kiefor signed the notice on behalf of all of the named plaintiffs.

In *People v. Krueger*, 146 Ill. App. 3d 530, 533, 495 N.E.2d 993 (1986), the appellate court held that it would consider the appeal only as to the *pro se* appellant who signed the notice of appeal. In *Beneficial Development Corp. v. City of Highland Park*, 239 Ill. App. 3d 414, 416, 606 N.E.2d 837 (1992), *rev'd in part on other grounds*, 161 Ill. 2d 321, 641 N.E.2d 435 (1994), the appellate court struck those portions of the appellant's brief that concerned parties not named in the notice of appeal. Although the attorney who signed the notice of appeal was the attorney of record for all the plaintiffs at trial, he signed the notice of appeal as the attorney for plaintiff-appellant Beneficial. The court held that the "notice of appeal clearly named Beneficial, and Beneficial alone, as plaintiff-appellant." *Beneficial Development*, 239 Ill. App. 3d at 416.

In this case, Kiefor signed the notice of appeal on behalf of all the plaintiffs-appellants. Rule 303(a) requires that the notice of appeal be signed by all appellants *or* by an attorney on behalf of the appellants. We therefore hold that all of the plaintiffs-appellants named in the notice of appeal are properly before this court and there is no need to grant leave to amend the notice. We now turn to the merits of plaintiffs' appeal.

## B. Plaintiffs' Claims

The plaintiffs argue that the trial court erred in dismissing their third-party-beneficiary contract claims as time-barred under section 2 of the Bond Act. They contend that because Winterset did not secure a payment bond and the Village did not require them to do so, no bond existed upon which a suit could be commenced under the Bond Act. Because there was no bond to sue on, the plaintiffs argue that their claims must be viewed under statutes and case law governing third-

party contracts. In the alternative, the plaintiffs argue that if section 2 of the Bond Act does apply, the police station was not completed on February 22, 2001.

## 1. *Standard of Review*

■ The trial court granted the Village's motions to dismiss the plaintiffs's claims under section 2—619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(5) (West 2002)). A claim is properly dismissed under section 2—619(a)(5) where "the action was not commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 2002). A section 2—619 motion to dismiss admits the legal sufficiency of the plaintiff's cause of action and we review such a dismissal *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68, 799 N.E.2d 273 (2003).

## 2. *Bond Act*

■ Section 1 of the Bond Act (30 ILCS 550/1 (West 1998)) provides:
"Except as otherwise provided by this Act, all officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise."

Section 2 explains:
"Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond or letter of credit shall be executed as provided in this Act, shall have the right to sue on such bond or letter of credit in the name of the State, or the political subdivision thereof entering into such contract *** for his use and benefit, and in such suit the plaintiff shall file a copy of such bond ***, certified by the party or parties in whose charge such bond *** shall be, which copy shall, unless execution thereof be denied under oath, be prima facie evidence of the execution and delivery of the original; provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, *** liable to such sub-contractor *** to any greater extent than it was liable under the

law as it stood before the adoption of this Act." 30 ILCS 550/2 (West 1998). Any party seeking to enforce a claim for labor or materials has no right of action unless the party files a verified notice of the claim with the officer, board, bureau, or department awarding the contract, "within 180 days after the date of the last item of work or the furnishing of the last item of materials." 30 ILCS 550/2 (West 1998). Additionally, no action of any kind shall be brought more than six months after the State or political subdivision accepts the building project or work. 30 ILCS 550/2 (West 1998).

In *East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.*, 235 Ill. App. 3d 756, 758, 601 N.E.2d 972 (1992), the school district and a general contractor entered into a contract for work to be completed on the high school. The general contractor hired subcontractors to perform work on the contract but failed to pay them in full. The subcontractors sued the school district to collect those amounts not paid by the general contractor. The subcontractors argued that under the Bond Act the school district had a duty to require the general contractor obtain a payment bond and that they were third-party beneficiaries of the contract between the school district and general contractor.

The *East Peoria* court explained that the provisions of the Bond Act are read into all public works contracts between a public entity and a general contractor. The Bond Act is remedial and " 'is liberally construed to effectuate the General Assembly's intent to encourage and protect artisans, materialmen, and tradesman.' " *East Peoria*, 235 Ill. App. 3d at 759-60, quoting *Chicago Housing Authority v. United States Fidelity & Guaranty Co.*, 49 Ill. App. 2d 407, 410, 199 N.E.2d 217 (1964). The court therefore held that the Bond Act mandated that the school district require the general contractor to obtain a payment bond. *East Peoria*, 235 Ill. App. 3d at 760.

The *East Peoria* court also held that the subcontractors were third-party beneficiaries of the contract between the school district and the general contractor, explaining that "[a]s a policy matter, it would be meaningless here to read the Bond Act requirements into the [general contract] without reading in third-party rights to enforce that statute." *East Peoria*, 235 Ill. App. 3d at 761. In addition, the court held that the subcontractors were third-party beneficiaries under the actual contract between the school district and the general contractor. The contract required that the general contractor: (1) "promptly pay all amounts due" the subcontractors upon receipt of any payment, (2) "develop and implement a procedure for the review, processing, and payment of applications" by subcontractors for progress and final pay-

ment, and (3) submit satisfactory evidence that all indebtedness had been paid before the public entity could issue the final payment. See *East Peoria*, 235 Ill. App. 3d at 761. The court explained that "these promises regarding payment show that the parties anticipated that subcontractors' services would be provided on credit and that the parties wanted to make express arrangements for payment to them." *East Peoria*, 235 Ill. App. 3d at 761-62.

In *Shaw Industries, Inc. v. Community College District No. 515*, 318 Ill. App. 3d 661, 667-69, 741 N.E.2d 642 (2000), the appellate court distinguished the holding in *East Peoria*. Shaw was a subcontractor hired by the general contractor, Prairie State Associates, Inc. (PSA), to complete work on a contract between PSA and Prairie State College. Shaw filed a complaint against the college alleging a breach of contract arising from the college's failure to require PSA to procure a payment bond pursuant to the Bond Act. The college moved to dismiss the complaint, arguing, *inter alia*, (1) Shaw could not assert a breach of contract claim because Shaw was not in privity of contract for the contract issue, and (2) Shaw was barred by the 180-day statute of limitations set out in section 2 of the Bond Act. The trial court granted the motion to dismiss. *Shaw Industries*, 318 Ill. App. 3d at 664.

The appellate court affirmed and held that the contract between PSA and the college did not contain any provisions indicating that the contract was entered into for Shaw's direct benefit. The court distinguished the holdings in both *East Peoria* and *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901 (C.D. Ill. 1987), explaining that in each of those cases, the contracts entered into by the parties were entered into for the direct benefit of a third party. *Shaw Industries*, 318 Ill. App. 3d at 668-69. Although "no issue exists in the instant case that a third-party beneficiary contract action can be asserted by an unpaid subcontractor against a public entity where such public entity has failed to procure from the general contractor a payment bond as required by the Bond Act," the court held that Shaw was not a direct beneficiary under the contract. *Shaw Industries*, 318 Ill. App. 3d at 669. Therefore, in the view of the *Shaw Industries* court, Shaw's cause of action was limited to the protection offered by the Bond Act, and accordingly, the provisions of the Bond Act controlled.

The *Shaw Industries* court went on to explain that even though the college failed to procure a payment bond as mandated by section 1 of the Bond Act, Shaw was required to comply with the six-month statute of limitations mandated by section 2 of the Bond Act. *Shaw Industries*, 318 Ill. App. 3d at 672. The court explained:

"Shaw's third-party beneficiary action is predicated solely upon

section 1 of the Bond Act (30 ILCS 550/1 (West 1998)). However, the Bond Act must be read as a whole. In particular, section 1 of the Bond Act must be read in conjunction with section 2 of the Bond Act (30 ILCS 550/2 (West 1998)). Section 2 sets forth the procedure which must be followed by a person seeking to enforce liability under section 1 of the Bond Act. Compliance with the limitations period in section 2 of the Bond Act is a jurisdictional requirement. [Citation.] Shaw failed to comply with the six-month limitations period to file suit in section 2 of the Bond Act. Accordingly, the trial court did not err in dismissing the plaintiff's complaint with prejudice." *Shaw Industries,* 318 Ill. App. 3d at 671-72.

In *A.E.I. Music Network, Inc. v. Business Computers, Inc.,* 290 F.3d 952 (7th Cir. 2002), the Seventh Circuit declined to follow the holding in *Shaw Industries* when considering a similar complaint under the Bond Act. The Seventh Circuit held that the statute of limitations in section 2 of the Bond Act was applicable only to a suit on the bond; where no bond was procured, a suit on the bond was impossible. *A.E.I. Music Network,* 290 F.3d at 954. Instead, the "natural remedy" was a breach of contract claim by the subcontractor against the public entity. The court held that because the bond requirement in section 1 of the Bond Act is read into every construction contract of a public entity to give the subcontractor a remedy, the doctrine of third-party beneficiaries entitled the subcontractor to sue for breach of contract. Pursuant to section 13—214 of the Code, the plaintiff had four years to file its complaint. *A.E.I. Music Network,* 290 F.3d at 955.

The Seventh Circuit suggested that the applicability of section 2's statute of limitations "has divided Illinois's intermediate appellate court." *A.E.I. Music Network,* 290 F.3d at 954. The court explained that under *Shaw Industries* the 180-day limitation was applicable because the suit, however captioned, was necessarily a suit to enforce the Bond Act, while *East Peoria* "implies that the 180-day period is inapplicable, because the court described the subcontractor's suit against the agency as a third-party-beneficiary suit for breach of contract rather than as a suit under the Bond Act." *A.E.I. Music Network,* 290 F.3d at 954.

Initially, we point out that the court in *East Peoria* did not consider whether the statute of limitations in section 2 of the Bond Act applied to the subcontractor's suits. The court was asked to determine whether the Bond Act mandated that the public entity require the general contractor to obtain a payment bond. The court answered that question in the affirmative, which both the *Shaw Industries* and *A.E.I. Music Network* courts recognized. The court was also asked to

determine whether the subcontractors were third-party beneficiaries of the contract between the public entity and the general contractor. The court answered that question in the affirmative. The court held that pursuant to the Bond Act, the subcontractor was a third-party beneficiary to the contract; additionally, the subcontractors were third-party beneficiaries to the contract based on specific provisions of the contract.

Like the plaintiffs in *East Peoria*, plaintiffs in this case are third-party beneficiaries pursuant to the Bond Act and under the provisions of the general contract. Whether a party is a third-party beneficiary depends upon the intent of the parties to the contract and is determined on a case-by-case basis. *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1051, 738 N.E.2d 592 (2000). "The right of the third party benefitted by a contract to sue thereon rests upon the liability of the promisor, and this liability must appear from the language of the instrument when properly interpreted and construed." *Metro East Sanitary District v. Village of Sauget*, 131 Ill. App. 3d 653, 657, 475 N.E.2d 1327 (1985).

The plaintiffs point out that the contract between the Village and Winterset, on its face, directly benefitted a number of parties, including themselves as subcontractors. The contract specifically provided for subcontractors and gave the Village the right to object to one or all of the subcontractors. The contract also required the subcontractors to preserve and protect the rights of the Village under contract.

In addition to those provisions, the contract contains provisions similar to those found in the contract in *East Peoria*. Section 9.3.1 of AIA Document A201-1997, which was incorporated into the general contract, provided that at least 10 days before each progress payment, Winterset was required to submit to the architect an itemized application of payment for operations. The contract required that if the Village or architect so required, the application was to be supported by data substantiating Winterset's right to payment, including as copies of requisitions from subcontractors and material suppliers. Under section 9.3.3, Winterset

"further warrants that upon submittal of an application for payment all work for which certificates of payment have been previously issued and payments received from the [Village] shall, to the best of [Winterset's] knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of [Winterset], subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the work."

Section 9.6.2 states that Winterset "shall promptly pay each

subcontractor, upon receipt of payment from the [Village], *** the amount to which said subcontractor is entitled," and section 9.10.2 conditions final payment upon, *inter alia*, an affidavit from Winterset that payrolls, bills for materials and equipment, and other indebtedness connected with the police station had been paid or satisfied.

Under the contract it is clear that Winterset owed certain duties to the plaintiffs. However, the contract also provided that the Village was not obligated to ensure the subcontractors were paid. Section 9.4.2 explained that the issuance of a certificate of payment was not a representation that the architect had "reviewed copies of requisitions received from subcontractors and material suppliers and other data requested by the [Village] to substantiate [Winterset's] right to payment, or made examination to ascertain how or for what purpose [Winterset] has used money previously paid on account of the contract sum." In fact, section 9.6.4 specifically states that the Village did not "have an obligation to pay or to see to the payment of money to a subcontractor except as may otherwise be required by law."

Despite these provisions, the plaintiffs, as subcontractors, were direct third-party beneficiaries under the contract. As direct third-party beneficiaries, the plaintiffs had a common-law right to sue for breach of contract. See *East Peoria*, 235 Ill. App. 3d at 760 ("if a contract is entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof"). However, the plaintiffs' claims against the Village were predicated solely upon the Village's failure to comply with section 1 of the Bond Act.[1] In their complaints, the plaintiffs make no claims that the Village violated any provisions of the general contract. Therefore, pursuant to *Shaw Industries*, the plaintiffs were required to adhere to the statute of limitations in section 2 of the Bond Act.

Although this court is not bound by federal decisions (see *Eickmeyer v. Blietz Organization, Inc.*, 284 Ill. App. 3d 134, 141, 671 N.E.2d 795 (1996)), we can look to these decisions as persuasive authority (*Ramette v. AT&T Corp.*, 351 Ill. App. 3d 73, 83, 812 N.E.2d 504 (2004)). This court may follow a federal decision if we find the analysis to be " 'reasonable and logical.' " *Ramette*, 351 Ill. App. 3d at 83, quoting *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 835, 807 N.E.2d 1165, 1170 (2004).

In *A.E.I. Music Network*, the Seventh Circuit felt compelled to reconcile the implied conflict between the holdings in *East Peoria* and

---

[1]Airy's third-party-beneficiary claim was based on the Village's violation of the Mechanics Lien Act (770 ILCS 60/23 (West 1998)), although the trial court treated the claim as if it was brought under the Bond Act.

*Shaw Industries. A.E.I. Music Network*, 290 F.3d at 954. Although the subcontractors in both of the cases brought a breach of contract suit based on their status as third-party beneficiaries, the *Shaw Industries* court held that the claim, however captioned, was a suit to enforce the Bond Act, while the *East Peoria* court treated the suit as a breach of contract action. The Seventh Circuit determined that if presented with this question, the Illinois Supreme Court would follow the holding in *East Peoria*. With due regard to our colleagues on the *Shaw Industries* court, we agree with the Seventh Circuit. To the extent that the plaintiffs' breach of contract claims are predicated on their common-law rights as third-party beneficiaries under the general contract, the statute of limitations set forth in the Bond Act does not apply.

The Bond Act grants "[e]very person furnishing material or performing labor" the "right to sue on such bond *** in the name of the State, or the political subdivision thereof entering into such contract." 30 ILCS 550/2 (West 1998). "Provided, however, that any person having a claim for labor, and material as aforesaid shall have no such right of action unless he shall have filed a verified notice of said claim *** within 180 days after the date of the last item of work ***." 30 ILCS 550/2 (West 1998).

The *Shaw Industries* court held that because Shaw's underlying action was predicated solely on the Bond Act and was, in effect, a suit to enforce the requirements of the Bond Act, Shaw had to comply with the statute of limitations in section 2. However, the Seventh Circuit points out that the 180-day statute of limitations is applicable to a " 'claim for labor, and material *as aforesaid.*' " (Emphasis added.) *A.E.I. Music Network*, 290 F.3d at 954, quoting 30 ILCS 550/2 (West 1998). That claim is the right to sue on the bond. In this case, plaintiffs did not sue on the bond, but sued as third-party beneficiaries to enforce the Bond Act, which was read into the general contract. We agree with the Seventh Circuit that where a bond was not procured, a party's remedy cannot be a suit on a nonexistent bond.

■ The Village breached the general contract when it failed to require Winterset to furnish, supply and deliver a payment bond. "The requirement of posting a bond found in section 1 of the Bond Act is read into every construction contract of a public entity, [citation], precisely to give the subcontractor a remedy; and thus it became a term of the contract." *A.E.I. Music Network*, 290 F.3d at 955. As direct third-party beneficiaries, plaintiffs had the right to sue on the contract. We therefore determine that the statute of limitations in section 2 of the Bond Act does not control the outcome of this case. We, therefore, reverse the trial court's order dismissing plaintiffs' third-

party-beneficiary claims against the Village as time-barred under the Bond Act.

### III. Conclusion

For the reasons stated, we reverse the judgment of the trial court.

Reversed.

BURKE, P.J., and HALL, J., concur.