# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Lake County Grading Co. v. Village of Antioch*, 2013 IL App (2d) 120474

---

| | |
|---|---|
| Appellate Court Caption | LAKE COUNTY GRADING COMPANY, LLC, Plaintiff-Appellee, v. THE VILLAGE OF ANTIOCH, Defendant-Appellant (Neumann Homes, Inc., Defendant). |
| District & No. | Second District<br>Docket No. 2-12-0474 |
| Filed | February 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by plaintiff subcontractor to recover from defendant village for work performed in connection with public improvements required by the village for defendant contractor's residential subdivisions, summary judgment was properly entered for plaintiff on its counts alleging breach of contract under a third-party beneficiary theory, notwithstanding the village's contention that plaintiff had to proceed under the Public Construction Bond Act, since plaintiff was a third-party beneficiary of the village's agreement with the contractor, the village's failure to obtain a payment bond from the contractor made the Bond Act inapplicable, and plaintiff's breach-of-contract claims were timely. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-L-329; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert J. Long, of Daniels, Long & Pinsel, LLC, of Waukegan, and Lawrence R. Moelmann and Nancy G. Lischer, both of Hinshaw & Culbertson LLP, of Chicago, for appellant.

Bogdan Martinovich, of Ray & Glick, Ltd., of Libertyville, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Neumann Homes, Inc., entered into two infrastructure agreements (the contract) with defendant the Village of Antioch (Village), to make certain public improvements in two residential subdivisions. Pursuant to the contract, Neumann provided four surety bonds that guaranteed performance for the benefit of the Village. The bonds did not also guarantee payment to subcontractors, which was required by section 1 of the Public Construction Bond Act (Bond Act). 30 ILCS 550/1 (West 2010). Neumann defaulted on its contract with the Village and also failed to pay plaintiff, Lake County Grading Co., LLC., a subcontractor that worked on the project.

¶ 2        Plaintiff filed a five-count second amended complaint to recover payment from the Village. The trial court granted plaintiff summary judgment on counts II and IV, in which plaintiff alleged breach of contract under a third-party-beneficiary theory. Plaintiff's theory was that (1) section 1 of the Bond Act (see 30 ILCS 550/1 (West 2010)) required the Village to obtain from Neumann a payment bond for the benefit of subcontractors, (2) Neumann's bonds were only performance bonds and not payment bonds, and (3) the Village's noncompliance with section 1 of the Bond Act rendered it liable for third-party-beneficiary breach of contract. On appeal, the Village argues that under section 1 a payment bond provision was read into Neumann's performance bonds, and therefore plaintiff's recourse was to file an action on the bonds under section 2 of the Bond Act, which was barred by the 180-day limitations period set out therein (30 ILCS 550/2 (West 2010)). We affirm.

¶ 3                                I. FACTS

¶ 4        This action arises from construction work performed in two residential subdivisions in Antioch, commonly known as the NeuHaven Subdivision and the Clublands Subdivision. Pursuant to the contract, Neumann agreed to construct certain public improvements for the Village's benefit. Thereafter, Neumann and plaintiff entered into agreements for plaintiff to

perform certain grading work required under the contract. The pleadings present no dispute that plaintiff completed the work in compliance with the contract but was not paid in full for its services. Neumann is not a party to this appeal. The Village issued two special service area (SSA) bonds to cover some of the costs.

¶ 5       The contract required Neumann to provide surety bonds, the amounts of which were based on the total cost of the improvements. Neumann provided four surety bonds, issued by Fidelity and Deposit Company of Maryland (Fidelity), to cover the work. The four bonds were substantively similar, each providing in part that "NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that, if said principal [Neumann] shall perform and complete said improvement(s) to said development in accordance with either the plan(s)/specification(s)/agreement, then this obligation shall be void, otherwise to be and remain in full force and effect. THIS BOND WILL TERMINATE upon written acceptance of the improvements by the Obligee [Village] to the Principal [Neumann] and/or Surety [Fidelity]." While the bonds guaranteed performance by Neumann, they were silent regarding payments to subcontractors, like plaintiff.

¶ 6       Neumann was unable to complete the improvements or to pay plaintiff in full. On November 1, 2007, Neumann declared bankruptcy. On February 18, 2008, plaintiff served Neumann and the Village with notices of a lien claim on a public improvement (see 770 ILCS 60/23 (West 2010)) and notices of a bond claim (see 30 ILCS 550/1, 2 (West 2010)). Plaintiff last performed work on the NeuHaven Subdivision on April 16, 2007, which made the 180th day October 13, 2007. Plaintiff last performed work on the Clublands Subdivision on December 23, 2006, which made the 180th day June 4, 2007. The parties do not dispute that plaintiff made its notices of claims more than 180 days after last performing work or providing materials. Mark Reich, a managing member of plaintiff, testified that he handles lien and bond claims for plaintiff. Reich stated that plaintiff had delayed sending notices of its claims because plaintiff did not want to risk its good business relationship with Neumann and feared losing future work.

¶ 7       Plaintiff filed a five-count second amended complaint, seeking to recover payment from the Village. Counts I and III were lien claims for public funds (see 770 ILCS 60/23 (West 2010)) and count V was a claim for unjust enrichment, but these claims ultimately were dismissed and are not part of this appeal.

¶ 8       Counts II and IV alleged third-party-beneficiary breach of contract. Specifically, plaintiff alleged that section 1 of the Bond Act and section 3.2(a) of the contract conferred third-party-beneficiary status upon plaintiff. Plaintiff alleged that the Village has breached its duty to require from Neumann a sufficient payment bond for the benefit of plaintiff.

¶ 9       Following cross-motions for summary judgment, the trial court granted plaintiff summary judgment on counts II and IV. The Village timely appeals.

¶ 10                                II. ANALYSIS

¶ 11                            A. Standard of Review

¶ 12       The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill.

2d 32, 42-43 (2004). Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597 (2004). In reviewing a grant of summary judgment, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). If a party moving for summary judgment introduces facts that, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. *Klitzka*, 348 Ill. App. 3d at 597.

¶ 13    The summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. *Adams*, 211 Ill. 2d at 43. However, summary judgment is a drastic means of disposing of litigation and should not be granted unless the movant's right to judgment is clear and free from doubt. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). We note that, by filing cross-motions for summary judgment, parties agree that only a question of law is involved and invite the court to decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958). However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993).

¶ 14    Where a case is decided through summary judgment, our review is *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010). *De novo* review is also appropriate to the extent that this case turns on construction of the provisions of the Bond Act, which presents a question of law. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50. The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Gaffney*, 2012 IL 110012, ¶ 56. "When the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory interpretation." *Gaffney*, 2012 IL 110012, ¶ 56. "We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature." *Gaffney*, 2012 IL 110012, ¶ 56.

¶ 15                                           B. Bond Act

¶ 16    The Village argues that section 1 of the Bond Act incorporates payment and performance provisions in all surety bonds for public construction even if the bonds do not expressly include such provisions, and therefore the bonds that Neumann procured would satisfy plaintiff's claims for payment. However, the Village concludes, because plaintiff gave notice

of its claims more than 180 days after last working on the project, the claims are barred by the 180-day limitations period of section 2 of the Bond Act. We disagree. The Village's argument is based on the flawed premise that plaintiff's only recourse is to bring an action under the Bond Act. Counts II and IV of the second amended complaint state common-law claims for third-party-beneficiary breach of contract, not claims under the Bond Act. Although the Bond Act causes certain terms to be read into the contract, plaintiff's breach-of-contract action is distinct from an action brought under the statute, such that the Bond Act's statute of limitations does not apply.

¶ 17    Section 1 of the Bond Act provides that (1) political subdivisions contracting for public work must require the contractor to furnish a surety bond to guarantee performance as well as payment owed to subcontractors and (2) each such bond is "deemed to contain" certain provisions, even if they are not expressly included in the bond. Section 1 provides in relevant part as follows:

> "Except as otherwise provided by this Act, all officials, boards, commissions, or agents of this State in making contracts for public work of any kind costing over $50,000 to be performed for the State, and all officials, boards, commissions, or agents of any political subdivision of this State in making contracts for public work of any kind costing over $5,000 to be performed for the political subdivision, shall require every contractor for the work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into the contract, as the case may be, with good and sufficient sureties. The amount of the bond shall be fixed by the officials, boards, commissions, commissioners or agents, and *the bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in the work and for all labor performed in the work, whether by subcontractor or otherwise.*
>
>        ***
>
> Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:
>
> 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " (Emphasis added.) 30 ILCS 550/1 (West 2010).

¶ 18    In turn, section 2 of the Bond Act prescribes a cause of action for an unpaid subcontractor on the bond. The relevant version of section 2 provides in part as follows:

> "Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond or letter of credit shall be executed as provided in this Act, shall have the right to

sue on such bond or letter of credit in the name of the State, or the political subdivision thereof entering into such contract *** for his use and benefit, and in such suit the plaintiff shall file a copy of such bond ***, certified by the party or parties in whose charge such bond *** shall be, which copy shall, unless execution thereof be denied under oath, be prima facie evidence of the execution and delivery of the original; provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, *** liable to such sub-contractor *** to any greater extent than it was liable under the law as it stood before the adoption of this Act." 30 ILCS 550/2 (West 2010).

¶ 19 Any party seeking to enforce a claim for labor or materials has no right of action under the Bond Act unless the party files a verified notice of the claim with the officer, board, bureau, or department awarding the contract, "within 180 days after the date of the last item of work or the furnishing of the last item of materials." 30 ILCS 550/2 (West 2010). Additionally, no action of any kind shall be brought under the Bond Act more than six months after the State or political subdivision accepts the building project or work. 30 ILCS 550/2 (West 2010).[1]

¶ 20 The Village argues that the 180-day limitations period of section 2 bars the claims contained in counts II and IV of the second amended complaint and, therefore, the trial court should have entered summary judgment for the Village. However, section 2 of the Bond Act states that "[t]he remedy provided in this Section is in addition to and independent of any other rights and remedies provided at law or in equity." 30 ILCS 550/2 (West 2010). Counts II and IV alleged common-law third-party-beneficiary contract claims, which are independent of the type of action prescribed by section 2. Thus, plaintiff's claims turn on the language of the contract.

¶ 21 The construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law (*Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005)), which we review *de novo* (*Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007)). " 'The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.' " *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 24 (quoting *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001)).

¶ 22 "An individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual." *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). "There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Martis*, 388 Ill. App. 3d at 1020. Without contract language, the contracting parties' knowledge, expectation, or even intention that others will benefit from their agreement is not enough to overcome the presumption that

---

[1] Public Act 97-487 (eff. Jan. 1, 2012) rewrote section 2 in part to extend from six months to one year the period for bringing an action under section 2 of the Bond Act.

the contract was intended for the direct benefit of the parties. *Martis*, 388 Ill. App. 3d at 1020.

¶ 23    A person's status as a third-party beneficiary turns on whether the contract language shows such an intent of the contracting parties. *Martis*, 388 Ill. App. 3d at 1020. The contract language must show that the contract was made for the direct, not merely incidental, benefit of the third party. *Martis*, 388 Ill. App. 3d at 1020. Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. "If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract." *Martis*, 388 Ill. App. 3d at 1020. "The plaintiff bears the burden of showing that the parties to the contract intended to confer a direct benefit on him." *Martis*, 388 Ill. App. 3d at 1020.

¶ 24    Plaintiff qualifies as a third-party beneficiary. The payment bond requirement found in section 1 of the Bond Act is read into a public works contract between a public entity and a general contractor. *Ardon Electric Co. v. Winterset Construction, Inc.*, 354 Ill. App. 3d 28, 34 (2004). Specifically, section 1 states that, as part of its agreement with the general contractor, the public entity "shall require every contractor for the work to furnish, supply and deliver a bond," and the bond shall be conditioned for the completion of the contract, for the payment of material used in the work, and for all labor performed in the work, including work completed by subcontractors. 30 ILCS 550/1 (West 2010).

¶ 25    "The Bond Act is remedial and ' "is liberally construed to effectuate the General Assembly's intent to encourage and protect artisans, materialmen, and tradesmen." ' " *Ardon*, 354 Ill. App. 3d at 34 (quoting *East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.*, 235 Ill. App. 3d 756, 759-60 (1992), quoting *Chicago Housing Authority v. United States Fidelity & Guaranty Co.*, 49 Ill. App. 2d 407, 410 (1964)). Therefore, the Bond Act mandates that the public entity require the general contractor to obtain a payment bond. *Ardon*, 354 Ill. App. 3d at 34 (citing *East Peoria*, 235 Ill. App. 3d at 760). The Village violated section 1, and thus breached the contract, when it failed to require Neumann to procure such a payment bond.

¶ 26    A subcontractor is a third-party beneficiary of a contract between a public entity and a general contractor because, " '[a]s a policy matter, it would be meaningless here to read the Bond Act requirements into the [general contract] without reading in third-party rights to enforce that statute.' " *Ardon*, 354 Ill. App. 3d at 34 (quoting *East Peoria*, 235 Ill. App. 3d at 761).

¶ 27    Moreover, consistent with the payment bond provision, section 3.2(a) of the contract provides that "[t]he Village agrees that [Neumann] shall construct the public improvements using subcontractors and materialmen selected from time to time by [Neumann] in [Neumann's] sole discretion." The payment bond provision read into the contract as well as section 3.2(a) of the contract itself show the intent of Neumann and the Village to make plaintiff a third-party beneficiary. See *East Peoria*, 235 Ill. App. 3d at 761-62 ("promises regarding payment show that the parties anticipated that subcontractors' services would be provided on credit and that the parties wanted to make express arrangements for payment to them").

¶ 28 The Appellate Court, First District, Second Division, reached a different result in *Shaw Industries, Inc. v. Community College District No. 515*, 318 Ill. App. 3d 661, 667-69 (2000). In *Shaw Industries*, the general contractor, Prairie State Associates, Inc. (PSA), hired Shaw to complete work under a contract between PSA and Prairie State College. Like plaintiff in this case, Shaw filed a complaint against the college alleging a breach of contract arising from the college's failure to require PSA to procure a payment bond as required by the Bond Act. The college moved to dismiss the complaint, arguing, *inter alia*, that Shaw was barred by the 180-day limitations period set out in section 2 of the Bond Act. The trial court granted the motion to dismiss. *Shaw Industries*, 318 Ill. App. 3d at 664.

¶ 29 The appellate court affirmed the dismissal, holding that the contract between PSA and the college did not contain any provisions indicating that the contract was entered into for Shaw's direct benefit. The court distinguished *East Peoria* and *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901 (C.D. Ill. 1987), explaining that in each of those cases the contract was entered into for the direct benefit of a third party. *Shaw Industries*, 318 Ill. App. 3d at 668-69. The *Shaw Industries* court recognized the well-settled principle that a third-party-beneficiary contract action can be asserted by an unpaid subcontractor against a public entity where such public entity has failed to procure from the general contractor a payment bond as required by the Bond Act. *Shaw Industries*, 318 Ill. App. 3d at 669. However, the court held that Shaw was not a direct beneficiary under the express terms of the contract and that reading the payment bond provision into the contract rendered Shaw's third-party-beneficiary action vulnerable to the limitations provisions of the Bond Act. *Shaw Industries*, 318 Ill. App. 3d at 672. In the view of the *Shaw Industries* court, Shaw's cause of action was limited to the protection offered by the Bond Act, and accordingly the outcome was controlled by the provisions of the Bond Act, including the 180-day limitations period set forth in section 2. *Shaw Industries*, 318 Ill. App. 3d at 672.

¶ 30 In *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952 (7th Cir. 2002), the Seventh Circuit suggested that the applicability of section 2's limitations period "has divided Illinois's intermediate appellate court." *A.E.I. Music Network*, 290 F.3d at 954. The court explained that *Shaw Industries* determined that the 180-day limitations period applied because the suit, however captioned, was necessarily a suit to enforce the Bond Act, while *East Peoria* implied that the 180-day limitations period did not apply, because the court described the subcontractor's suit against the agency as a third-party-beneficiary suit for breach of contract rather than as a suit under the Bond Act. *A.E.I. Music Network*, 290 F.3d at 954.

¶ 31 The Seventh Circuit declined to follow *Shaw Industries*, holding that the statute of limitations in section 2 of the Bond Act applies only to a suit on the bond; and where no bond is procured, a suit on the bond is impossible. *A.E.I. Music Network*, 290 F.3d at 954. Instead, the court reasoned, the "natural remedy" is a breach-of-contract claim by the subcontractor against the public entity. Because the bond requirement in section 1 of the Bond Act is read into public construction contracts to give subcontractors a remedy, the third-party-beneficiary doctrine entitles a subcontractor to sue for breach of contract. Thus, a subcontractor suing as a third-party beneficiary under a general contract has four years to file a complaint under section 13-214 of the Code of Civil Procedure. *A.E.I. Music Network*,

-8-

290 F.3d at 955; see also *Ardon*, 354 Ill. App. 3d at 39.

¶ 32    We disavow *Shaw Industries* to the extent that it incorrectly applied the Bond Act's limitations period to a breach-of-contract claim. Conversely *Ardon*, *A.E.I. Music Network*, and *East Peoria* correctly applied the statute of limitations for a breach-of-construction-contract action under similar facts. Because a public works contract is deemed to include a payment bond requirement with specific verbiage pursuant to section 1 of the Bond Act, a subcontractor's third-party-beneficiary action is not a suit on the bond and the Bond Act's limitations provisions do not apply. Rather, unless the surety is being dunned, the subcontractor's action is on the terms contained in the contract. Further, we note that this case is factually distinguishable from *Shaw Industries*, where the express terms of the contract did not make the subcontractor a third-party beneficiary.

¶ 33    We hold that the Village breached the contract when it failed to require Neumann to furnish a payment bond for the benefit of subcontractors. Section 1 of the Bond Act requires the general contractor to post a payment bond, and that requirement is read into a public construction contract precisely to give the subcontractor a remedy; thus a payment bond became a term of the contract between Neumann and the Village. As a direct third-party beneficiary, plaintiff had the right to sue on the contract. See *Ardon*, 354 Ill. App. 3d at 39. The limitations period of section 2 of the Bond Act applies only to a suit on the bond; where no bond was procured, a suit on the bond is impossible. *A.E.I. Music Network*, 290 F.3d at 954. Applying the Bond Act's limitations period to a breach-of-contract suit, as *Shaw Industries* did, is a *non sequitur*. Plaintiff's breach-of-contract claims are not time barred because the four-year statute of limitations for construction contracts (see 735 ILCS 5/13-214 (West 2010)) applies rather than the 180-day limitations period in section 2 of the Bond Act.

¶ 34    In its reply brief, the Village argues that we need not follow *Ardon*, *A.E.I. Music Network*, and *East Peoria* because, in those cases, the general contractors failed to procure a bond of any kind, while in this case the Village obtained performance bonds. The Village contends that, while we must read section 1's subcontractor payment provision into Neumann's performance bonds, such a provision could not be read into a bond in *Ardon*, *A.E.I. Music Network*, and *East Peoria* where no bonds existed. We disagree.

¶ 35    Admittedly, in *A.E.I. Music Network*, "no bond was posted; and as a result A.E.I. could not turn to a surety when it was stiffed." *A.E.I. Music Network*, 290 F.3d at 953. However, the actions brought in *Ardon* and *East Peoria* were based only on the absence of a payment bond; it is unclear whether the public entities procured any other kind of bond into which the payment provision of section 1 could be read. *Ardon*, 354 Ill. App. 3d at 30 ("no *payment* bond was available" (emphasis added)); *East Peoria*, 235 Ill. App. 3d at 759 ("The first issue for review is whether the Bond Act mandated that [the high school] require [the general contractor] to obtain a *payment* bond." (Emphasis added.)). The Village makes an unsupported factual statement about *Ardon* and *East Peoria*.

¶ 36    Furthermore, after providing that the public entity must require the contractor to furnish a surety bond to guarantee payment owed to subcontractors, section 1 of the Bond Act states that "such bonds" are deemed to include certain language set forth in the section. If a bond does not mention payment to subcontractors, it is not "such [a] bond." The specific language

to be included in the bond pursuant to section 1 is intended to clarify what might otherwise be seen as ambiguous bond language, not to expand a performance bond into a payment bond. In other words, the statute's specific language relating to payment is deemed to be included in the bond only after the public entity satisfies the predicate condition of requiring the contractor to procure a payment guarantee. To hold otherwise would create the practical absurdity of the claimant having to seek recovery on a bond that does not exist.

¶ 37    If we were to adopt the Village's argument, we would improperly shift from the Village to Fidelity the burden of ensuring compliance with section 1 of the Bond Act. Section 1 states that a public entity like the Village "shall require every contractor for the work to furnish, supply and deliver a bond" for the benefit of subcontractors, but the statute imposes no such duty on the surety. Furthermore, because Fidelity was not a party to the contract, its exposure was calculated based on contract terms over which it had no control.

¶ 38                                   III. CONCLUSION

¶ 39    Section 1 of the Bond Act, as well as section 3.2(a) of the contract itself, made plaintiff a direct third-party beneficiary with the right to sue on the contract. See *Ardon*, 354 Ill. App. 3d at 39. Because the Village did not require Neumann to procure a payment bond, a suit on such a bond is impossible and the statute of limitations of section 2 of the Bond Act does not apply. *A.E.I. Music Network*, 290 F.3d at 954. Plaintiff's breach-of-contract claims are timely under the four-year statute of limitations for construction contracts (see 735 ILCS 5/13-214 (West 2010)).

¶ 40    For the reasons stated, the summary judgment entered in favor of plaintiff is affirmed.

¶ 41    Affirmed.